## NAIVE-SPILLERS CORPORATION v. POSTAL TELEGRAPH-CABLE COMPANY.

Middle Section.   December 23, 1926.

Petitions for Certiorari denied by Supreme Court April 9, 1927.

1. **Telegraphs and telephones. Interstate messages are governed by the Federal law.**
   Interstate telegraph messages are governed by the Federal law since the passage of the Act of Congress of June 18, 1910.

2. **Telegraphs and telephones. The sender is, without assent in fact, bound as a matter of law by the provisions limiting liability because it is a part of the lawful established rate.**
   In an action to recover damages for the failure to deliver a telegram where the telegram was one of a class in which the liability of the telegraph company was limited to $500, held that under the Federal law the limitation of liability filed with the Interstate Commerce Commission is a part of the rate and that the sender is bound by this provision regardless of the fact that he knew or assented to it.

3. **Telegraphs and telephones. Negligence must be so gross as to amount to positive bad faith or the equivalent to fraud or intentional bad faith to remove case from under the provisions of this act.**
   Under the Act of Congress of June 18, 1910, the value fixed in the rates, tariffs and classifications is the limitation of liability for loss by negligence, unless the negligence is so wanton, wilful or so gross as to evince entire want of care, or an intention to inflict a wrong. It must be so gross as to amount to positive bad faith, equivalent to fraud or intentional wrong.

4. **Telegraphs and telephones. Evidence. Evidence held to show lack of gross negligence.**
   In an action to recover damages for the failure to deliver a telegram where the evidence showed that the telegram was delivered to the wrong

company, held that there was not sufficient evidence to remove the case from under the statute and the liability for failure to deliver the message was fixed by the rule of the Interstate Commerce Commission based upon the rates filed.

5. Telegraphs and telephones. Estoppel. Where agent advised one to do that which he is required to do by law it will not constitute an estoppel.

In an action to recover damages for failure to deliver a telegram where the evidence showed that the agent- of the telegraph company told plaintiff to dispose of his shipment to the best advantage possible, held that this did not estop the telegraph company from denying liability because it was plaintiff's duty to dispose of the shipment to the best advantage and plaintiff was not prejudiced by following the advise.

6. Telegraphs and telephones. Evidence. Evidence held to show that telegrams received by plaintiff was not sufficient to advise it that another telegram had been missent.

In an action to recover damages for the failure to deliver a telegram where the evidence showed that the telegram sent by plaintiff was misdelivered and the company receiving it wired plaintiff in reply thereto and the evidence further showed that plaintiff received many telegrams like the one received, held that the evidence was sufficient to require the question to be submitted to the jury to determine whether or not the telegram was sufficient to advise plaintiff's agent of the misdelivery of plaintiff's telegram.

7. Contracts. Where offer is made by telegram the deal is consummated upon delivery of telegram of acceptance to the telegraph office.

Where one makes an offer by telegram if accepted by telegram the deal is consummated upon delivery of the telegram to the telegraph office, and loss, delay or defective transmission of the acceptance by telegraph company does not prevent the consummation of the contract.

8. Telegraphs and telephones. The fact that plaintiff may have a cause of action against another for a breach of contract caused by the failure to deliver a telegram does not prevent plaintiff from recovering against the telegraph company providing its act is the direct cause of the loss.

In an action to recover damages for the failure to deliver a telegram where the defense was that the contract was consummated upon the delivery of the telegram to the telegraph office and plaintiff could have recovered his loss from the other contracting party because of the breach of the contract, held that this fact did not prevent a recovery against the telegraph company, since the injury flowed directly from the act of plaintiff's agent, in delivering the telegram to the wrong party.

Appeal in Error from Circuit Court, Davidson County; Hon. A. B. Neil, Judge.

Affirmed.

W. A. Guild, of Nashville, for plaintiff in error, Naive-Spillers, Corp.

Bass, Berry & Sims of Nashville, and W. C. Fitts, of New York City, for defendant in error, Postal-Telegraph Cable Co.

CROWNOVER, J. This was an action for damages against the Telegraph Company for the failure to deliver plaintiff's message sent from Nashville, Tennessee, to Charles Collins Company, in New York City. The latter company had wired plaintiff as follows:

"Will guarantee twenty-five on one to four cars of fowls shipment this week four percent and benefit of market. Best we can give. Wire quick if accepted or not."

To which plaintiff replied on same day (June 15, 1923), as follows:

"Answering will ship two or three cars fowls your guarantee twenty-five four percent commission. Don't think will have many chickens. Will wire you to tomorrow night how many cars and routing."

The latter telegram was delivered to defendant's office in Nashville and transmitted to New York City, but for some reason, not explained, it was never delivered to Charles Collins Company, but was delivered to another poultry dealer, Charles Werner, Inc., which corporation had no connection with the Charles Collins Company.

Pursuant to said telegrams plaintiff shipped three carloads of poultry to the Collins Company at the prices stated but upon arrival in New York City the shipments were refused by the Collins Company because of the nondelivery of the telegram last above-mentioned, poultry having declined in price. These facts were communicated to the agent of the telegraph company at Nashville, who advised plaintiff to dispose of the shipment to the best advantage, and plaintiff disposed of the same through the Collins Company at a loss of $1,413.84.

This action was instituted against the telegraph company to recover said loss and it was averred that said shipments were made without knowledge of the nondelivery of said telegram and that the defendant was guilty of gross negligence.

The defendant pleaded the general issue and also a special plea of limited liability to the amount of $500, being the value which plaintiff placed upon the message in order to obtain a cheap rate of transmission on unrepeated telegrams in accordance with the tariffs on file with the Interstate Commerce Commission.

The defendant filed a replication denying that the tariff provision as to the limitation of liability applied, as the defendant was guilty of gross negligence, and also set up an alleged waiver of the tariff provisions by the agent of the defendant in advising disposition of the shipments to the best advantage.

The action was tried by the judge and a jury. The defendant introduced no evidence, but at the close of the evidence, moved for peremptory instructions, (1) because the plaintiff had received a telegram from Charles Werner, Inc., before the shipments were made, which put plaintiff on notice of the nondelivery of said telegram, and the loss could have been averted by due care and diligence, (2) because the contract of sales was consummated with

Collins Company upon plaintiff's delivery of said telegram to the office of the defendant company, which constituted a binding contract, for which plaintiff had a right of action against the Collins Company, and therefore, the nondelivery of the telegram was not the direct and proximate cause of the breach of the contract and plaintiff's loss resulting therefrom, and (3) that at most defendant was not liable for more than $500, the limitation of liability fixed by the rates and tariffs for the nondelivery of an interstate message.

The court sustained the third ground of said motion, but overruled the others. The jury returned a verdict for $500 (the amount of the limitation of liability) and $58.08, interest thereon. Both plaintiff and defendant moved for a new trial, which motions were overruled, and both have appealed in error and have assigned errors.

The plaintiff, in its assignment of errors, insists that the court was in error in limiting the liability to $500, because the defendant was guilty of gross negligence in not delivering the telegram to Charles Collins Company, and in refusing to charge the jury that the defendant was liable for the full amount of the loss because it was guilty of gross negligence and also that the defendant was estopped to deny liability for the loss because defendant's agent directed the plaintiff to dispose of the poultry to the best advantage; whereas, the defendant insists in its assignment of errors that the court erred in overruling its motion for peremptory instructions, and in not charging the special request made by defendant on this subject.

It should be stated that the message not delivered was an unrepeated interstate message, and that the defendant, acting under the authority of the third paragraph of section 1 of the Amended Act of Congress passed June 18, 1910, filed with the Interstate Commerce Commission a classification of its messages into day, night, repeated and unrepeated messages with different rates for the different classes of messages, and among them provided for a limitation of liability to $500 for the nondelivery of unrepeated messages caused by negligence of its servants or otherwise, but also provided for higher rates for repeated messages and for guaranteed valuations. This was done by appropriate action and the tariff, rates and classifications were approved by the Interstate Commerce Commission.

The plaintiff's main contention is that the verdict is grossly inadequate as result of the court's restriction in the charge, limiting the recovery to $500, because the defendant was guilty of gross negligence in not delivering the telegram to the Collins Company. After an examination of the authorities we are of the opinion that this assignment is not well made.

Interstate messages are governed by the Federal law since the passage of the Act of Congress on June 18, 1910. See, Western Union Telegraph Company v. Schade, 137 Tenn., 214; Postal Telegraph-Cable Company v. Warren-Godwin Lumber Company, 251 U. S., 27, 64 L. Ed., 118.

The railroad rate for interstate shipments is established and can only be established by filing the tariff with the Interstate Commerce Commission, but telegraph companies may initiate rates for interstate messages without filing tariffs with the commission. See, Western Union Telegraph Company v. Esteve, 256 U. S., 573, 65 L. Ed., 1098.

Before the Act of Congress, the limitation of liability was a question of contract and of public policy; but since the passage of that Act a limitation of liability became an inherent part of the rate and the outstanding consideration became that of uniformity and equality of rates. The rate became, not, as before, a matter of contract, by which a legal liability could be modified, but as a matter of law, by which a uniform liability was imposed, and assent to the terms of the rate was rendered immaterial. When the rate is used that fixes the classification and the limitation of liability, regardless of whether the sender had knowledge of the different rates and classifications, since any deviation from the lawful rate would involve an undue preference or an unjust discrimination, as the rate lawfully established must apply alike to all. The sender is, without assent in fact, bound as a matter of law by the provision limiting liability, because it is a part of the lawful established rate. See, Western Union Telegraph Company v. Esteve, supra; Western Union Telegraph Company v. Czizek, 264, U. S., 281, 68 L. Ed., 682; American Railway Express Company v. Lindenberg, 260 U. S., 584, 67 L. Ed., 414.

As we have seen the limitation of liability is now fixed as a matter of law by the rates, tariffs and classifications, where they are reasonable and have been approved by the Interstate Commerce Commission, and they must apply alike to all in order to prevent undue preferences and unjust discriminations, but different rules of law apply where a telegraph company or an interstate carrier is guilty of wilful misconduct, fraud or conversion; hence, now it is not a matter of contract and the previous decisions on common law liability for gross negligence have little application.

Under this Act governing interstate commerce the stipulation constitutes a defense to liability beyond $500 unless the plaintiff prove some facts that take the case out of the protection of the statute.

Under this Act, as we construe our Federal decisions, the value fixed in the rates, tariffs and classifications is the limitation of

liability for loss by negligence, unless the negligence is so wanton, wilful or so gross as to evince entire want of care, or an intention to inflict a wrong. It must be so gross as to amount to positive bad faith, equivalent to fraud or intentional wrong.

In the case of Western Union Telegraph Company v. Czizek, supra, Chief Justice Holmes said:

> "When the message is valued, it may be doubted whether the valuation can be affected by the intensity of the vituperative epithet applied to an admitted fault."

In that case, the court said that the act of the receiving clerk could not reasonably be supposed to be more than a momentary inadvertence, but it did not set aside the holding of the Circuit Court of Appeals that such momentary inadvertence constituted gross negligence. The only comment upon this by the Supreme Court was that it was not a wilful wrong; hence, it may be inferred from the above quotation that the court's decision was made irrespective of whether the negligence was ordinary or gross, being based upon the principle that when the sender, having a choice of valuation, places a low valuation upon his message, the intensity of the vituperative epithet applied to the negligence can have no effect upon the valuation.

However, in the instant case, there is no proof of an intentional wrong. The defendant delivered a message addressed to Charles Collins Company to Charles Werner, Inc. Under the proof, the negligence in this case could be no greater than that shown in the Czizek case. It has been held that nondelivery of interstate freight is not construed as a conversion depriving a carrier of the benefit of the provision limiting liability, although there was a State statute authorizing such presumption. See, American Railway Express Company v. Levee, 263 U. S., 19, 68 L. Ed., 140-3.

We think that the case of Priester v. Western Union Telegraph Company, 102 Sou., 376 (Ala.), was based on a misapprehension of the law; hence, this assignment is overruled.

We think that the plaintiff's assignment that the defendant is estopped from denying liability for the loss because its agent directed the plaintiff to dispose of the poultry to the best advantage, is not well taken. The plaintiff does not contend that there was any agreement made at the time that the defendant would be liable for any resulting damage. It was the defendant's duty to dispose of the shipments to the best advantage irrespective of how it intended to handle its claim, or whether it intended to proceed against the Charles Collins Company under its contract, or by filing claim with the defendant. So, the advice of the defendant's agent was nothing more nor less than a statement of plaintiff's duty under the law, and did not contain any acknowledgment or

agreement as to liability, and certainly the defendant was not prejudiced in any manner by following this advice. In the absence of any advice it would have been the plaintiff's duty under the law to do the same thing. We do not think there is anything in this contention, as interstate carriers cannot be estopped by sub-sequent transactions of this character. If subsequent transactions could work an estoppel, it might result in undue preferences and unjust discriminations. See, Railroad v. Coal & Coke Company, 147 Tenn., 433; Railroad v. Murphree, 2 Tenn. App. Rep., 490. This assignment must be overruled. It results that all the assignments of plaintiff must be overruled.

Now, the defendant insists in its assignment of error, that the court erred in overruling its motion for peremptory instructions and in not charging the special request made by defendant on this subject:

First, because the plaintiff had received a telegram from Charles Werner, Inc., before the shipments were made, which put plaintiff on notice of the nondelivery of said telegram, and the loss could have been averted by the exercise of due care and diligence.

The plaintiff made the shipments on June 16, 1923, Before making the shipments, however, on the same day, the plaintiff received the following telegram from Charles Werner, Inc.;

"Answering O. K. Guarantee twenty-five four percent commission. Advise car number early."

Defendant insists that this telegram put the plaintiff on notice that its telegram had been delivered to the wrong person, and that by the exercise of due care and diligence it could have ascertained the mistake. The plaintiff insists that it received many telegrams making searching inquiries like the above, and that it thought this telegram was such an one, or that the telegram was intended for some other person, and upon receipt of the telegram it wrote to Charles Werner, Inc. stating that the telegram was evidently intended for some other person; but it developed, some days later, after the shipments had been made, that this telegram was in answer to plaintiff's telegram to the Charles Collins Company which had been delivered to Charles Werner, Inc.

After carefully reading this telegram we can see how the plaintiff's agent could have been misled, in the light of the circumstances surrounding the situation, and we think that the situation was such that this became a question for the jury, and the jury having passed upon the question we are bound by its findings; hence, this assignment must be overruled.

The next insistence is that the court should have directed a verdict because the contract of sale was consummated with Charles Collins Company upon plaintiff's delivery of said telegram to the

office of the defendant company at Nashville, and constituted a binding contract, for which plaintiff had a right of action against the Charles Collins Company, it necessarily results that the damages claimed by the plaintiff in this suit were not the direct and proximate result of the failure of the defendant to perform the contract, and could have easily been avoided by the plaintiff if it had so desired; hence, under these circumstances the plaintiff cannot recover of the defendant the special damages which it is claiming.

It is true that where one makes an offer by telegram, if accepted by telegram, the deal is consummated upon delivery of the telegram to the telegraph office, and loss, delay or defective transmission of acceptance made by telegram does not prevent the consummation of the contract. The reason for this rule is that the offerer has accepted that mode and has thus indicated that means of communication, and when the acceptor uses the same means of communication the contract is consummated. See, 6 R. C. L., 614, 615, sec. 35, 13 C. J., 300, 301, secs. 116 and 117; 1 Williston on Contracts, 146 sec. 83.

Hence, we think that the plaintiff had a right of action against Collins Company for the breach of the contract, and also had another right of action for the loss against the telegraph company for the violation of a public duty and contractual obligation, as the injury did not result from the intervening act of a third person, but the injury flowed directly from the negligent act of appellant's agents in delivering the telegram to the wrong person. See, Western Union Telegraph Company v. T. C. Davis Cotton Co. (Ark.), 280 S. W., 977; Pepper v. Telegraph Co., 87 Tenn., 557; Postal Telegraph Co. v. Miller, 5 Hig., 544; Jones on Telegraph and Telephone Companies, 2 Ed. sec., 477.

This question was directly raised and passed upon in the two Tennessee cases above cited. It results that this assignment of error must be overruled.

It results that all the assignments of errors of both parties must be overruled and the judgment of the lower court is affirmed. The cost of the appeal is divided, one-half being adjudged against the plaintiff and the other half against the defendant, for which executions may issue.

Faw, P. J., and Thompson, J., concur.