## WESTERN UNION TELEGRAPH CO. v. ANDERSON. (No. 2642.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 7, 1922. Rehearing Denied Dec. 14, 1922.)

Telegraphs and telephones ⊙⟹54(6) — Interstate Commerce Commission held not to fix minimum liability for negligence.

An order of the Interstate Commerce Commission regarding limits of liability for negligence in transmission and delivery of interstate messages *held* not to undertake to fix a minimum of absolute liability, but only a minimum below which telegraph companies could not limit their maximum liability.

Appeal from District Court, Lamar County; Norman Phillips, Judge.

Action by John Anderson against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

C. S. Todd, of Texarkana, Flippen & Miller, and Ralph Randolph, both of Dallas, and Francis R. Stark, of New York City, for appellant.

W. L. Willie, of Paris, for appellee.

HODGES, J. In March, 1922, the appellee, Anderson, filed an amended original petition in the court below, alleging, in substance, the following facts: That he resided in Lamar county, Tex., on the date referred to in his petition; that the appellant, the telegraph company, received the following message at Baltimore, Md., addressed to him at Paris, Tex.: "Trudie is dead Will arrive in Denison Saturday. [Signed] W. H. England." That the message was sent for the benefit of the plaintiff, the full price was paid, but it was never delivered, and that such nondelivery was due to the negligence of the telegraph company. It is further alleged that in July, 1921, the Interstate Commerce Commission issued an order fixing the minimum amount at which a telegraph company could limit its liability at $500 on unrepeated messages, to which class this message belonged. He prayed for damages in the sum of $600 and costs of suit. Appellant answered by general demurrer and general denial.

The case was submitted to the court without a jury, and the following is the substance of the findings filed: The message described by the plaintiff was sent, but never delivered; that the appellee, the addressee and beneficiary, resided in Paris, Tex., and if the message had been delivered he would have received the remains of the deceased at Denison; that the appellant was guilty of negligence in failing to deliver the message. He thus states his conclusions of law:

"I conclude that by reason of the negligence of the defendant in not delivering the message that the plaintiff, under and by reason of the order of the Interstate Commerce Commission, copied hereinafter, is entitled to recover judgment against the defendant in the sum of $500 for its failure to deliver the message."

Then follows a copy of the order of the Interstate Commerce Commission.

The judgment is assailed upon several grounds but mainly because it is founded alone upon erroneous construction of the order of the Interstate Commerce Commission, which was relied on as the basis of the recovery.

It is evident that the trial court interpreted that order as fixing a minimum liability of $500 against telegraph companies for negligence in the transmission and delivery of interstate messages. The order referred to is as follows:

"It is further ordered that said respondents (including this defendant) be and they are hereby notified and required to establish on or before July 13, 1921, and thereafter to maintain and apply, rules and provisions which shall limit said respondents' liability for errors or delays in the transmission or delivery or for nondelivery of interstate messages by telegraph to amounts not less than $500.00 for each such message received for transmission at the unrepeated message rate, or less than $5,000.00 for each such message received for transmission at the repeated message rate or less than the amount at which any such message received for transmission at the repeated message rate shall be valued in writing by the sender thereof when tendered for transmission and upon payment therefor to the respondent concerned of an additional charge equal to one-tenth of 1 per cent. of the amount by which such valuation shall exceed $5,000.00."

While the meaning of the Commission may not be entirely clear when this order is read as an isolated decree, the uncertainty disappears when the order is considered in connection with the subject-matter then before the Commission and the report of which the order is a part. Prior to the date of this order, telegraph companies had adopted rules fixing by contract a limitation upon their liability for damages resulting from negligence in the transmission and delivery of messages. Briefly stated, those rules offered the sender his choice of three classes of messages—the unrepeated, the repeated, and the valued—with a different rate for each class, depending upon the service to be performed and the liability to be assumed. For unrepeated messages it was stipulated that the company should not be liable for mistakes, delays, or nondelivery beyond the amount received for sending the message; but to protect the sender against possible loss in the event of errors in transmission, the company offered him the second, or repeated, class of messages at a rate of 1½ times the rate for the same message if unrepeated. For this additional rate the company agreed to assume a liability to the extent of 50 times the rate paid, with a maximum liability of $50. The third class of messages for the transmission of which the rate charge is the repeated rate plus a surcharge of one-tenth of 1 per cent. of the valuation of the message, was designed to insure the sender against any loss within the value placed upon the message. To afford protection against extravagant claims for damages on account of errors or delays which a repetition of the message would not have prevented, provision was made by the Western Union Telegraph Company for a limitation of its liability to $50. This practice applied to both unrepeated and repeated messages, unless a greater value was declared as the agreed amount of liability. In December, 1920, the reasonableness of those rules thus limiting the liability of telegraph companies came before the Interstate Commerce Commission for consideration. After considerable delay, the Commission made its report, of which the following is a part:

"Upon consideration of the record we find that the present rules of the respondents restricting their liability for negligence in the transmission or delivery, or for nondelivery of unrepeated and repeated interstate messages, are and for the future will be unreasonable; that the maximum liability in the case of a message for transmission for which the unrepeated rate is charged should not be less than five hundred dollars, and for a message received for transmission 'at the repeated rate five thousand dollars, which limitations we find to be reasonable as parts of the respective rates. Provision should be made for the transmission of valued messages under a liability limited to the value stated in writing by the sender of the message at the time it is offered for transmission, upon payment of the repeated rate plus one-tenth of one per cent. of the stated value in excess of five thousand dollars; and an order in accordance with the foregoing findings will be entered."

See I. C. C. Reports, Case No. 11524. Then follows the order, which has been copied.

It thus clearly appears that the Commission was not undertaking to fix a minimum of absolute liability in cases of negligence in the transmission or nondelivery of interstate messages, but a minimum below which telegraph companies could not limit their maximum liability. The petition did not state, nor did the facts establish, a cause of action.

The judgment of the district court will therefore be reversed, and the cause remanded.