**WESTERN UNION TELEGRAPH CO. v. NESTER et al.**

No. 9104.

Circuit Court of Appeals, Ninth Circuit.

Sept. 15, 1939.

---

[2] 43 Stat. 937, 28 U.S.C.A. § 227.

[3] 52 Stat. 855, 11 U.S.C.A. § 48(a).

[4] 50 Stat. 658, 11 U.S.C.A. § 403(e).

WILBUR, Circuit Judge, dissenting.

Francis R. Stark, of New York City, Oscar Lawler, of Los Angeles, Cal., and Alfred Sutro, of San Francisco, Cal. (Lawler, Felix & Hall, of Los Angeles, Cal., and Pillsbury, Madison & Sutro, of San Francisco, Cal., of counsel), for appellant.

August J. O'Connor and George J. Hider, both of Los Angeles, Cal., for appellees.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Appellant challenges a judgment rendered against it for breach of its duty to transmit and deliver $150 paid it by appellee Nester, to appellee Charles in the Republic of Honduras.

Appellees, at the time of the transactions in question, were partners engaged in operating, under lease, a mine in the Republic of Honduras. Nester, on August 2, 1937, at Los Angeles, shipped some goods to Charles, who was in the Republic of Honduras. The shipment arrived there on August 15, 1937. The applicable articles of the Honduras statutes, regarding confiscation of the goods are:

"Article No. 4—All goods shall be deposited in the national warehouses. * * *

"Article No. 7—The following merchandise shall not go into the national warehouses, and shall be entitled to only six days of free deposit on sites within the jurisdiction of the Customshouse: * * *

[The goods listed include those here involved.]

"Two centavos shall be charged daily for each kilogram of merchandise after the fixed period of time has elapsed, to cover the expense of safekeeping the articles under the custody of the state shall not exceed the period of six days on the following goods: * * *

[The goods listed do not include those here involved]

and fifteen days on all others.

"Article No. 9—The cargo referred to in Article 7th and 8th, shall be considered as of compulsory shipment, and its custody or reshipment must be applied for within the time and conditions established for deposits."

"Article No. 41—The merchandise shall become the property of the State, and will be sold in public auction, whenever its custody, deposit or reshipment are not requested as prescribed by the law—or whenever they are expressly abandoned by their owner."

Charles received notification of the arrival of the goods on August 19, 1937.

On September 1, 1937, Nester at Los Angeles paid appellant $150 to be transmitted and paid to Charles in the Republic of Honduras, as provided in a money order blank, pursuant to which the money was to be sent. One provision in such blank was: "In any event, the company shall not be liable for damages for delay, non-payment or underpayment of this money order, whether by reason of negligence on the part of its agents or servants or otherwise, beyond the sum of five hundred dollars, at which amount the right to have this money order promptly and correctly transmitted and promptly and fully paid is hereby valued, unless a greater value is stated in writing on the face of the application and an additional sum paid or

agreed to be paid based on such value equal to one-tenth of one per cent thereof." The money was not delivered to Charles. The above mentioned shipment was confiscated.

On July 26, 1938, appellee brought this action against appellant and its agent to recover $7,600 due to the alleged negligence in failing to deliver the money. Upon the trial, in which a jury was waived, appellees failed to prove any damages except the value of the confiscated shipment which was $500. They failed to prove the date of confiscation. The trial court handed down an opinion, 25 F.Supp. 478, 480, 481, in which it was said: "the loss of these goods, valued at about five hundred dollars, cannot be traced directly to the non-delivery of the money". The opinion further stated that the provision in the money order blank "is a provision for liquidated damages, which entitles the sender to recovery of the minimum amount of five hundred dollars in the absence of any proof or without any offer of proof". In the findings thereafter made, the trial court found that appellees "have suffered and sustained damages, loss and injury in the sum of" $500. Judgment was entered for that sum, from which this appeal is taken.

■ Upon argument this court questioned the jurisdiction of the lower court, because the citizenship of appellant's agent did not appear in the record, and at its request, the parties have filed briefs upon that question. Upon the authority of Horn v. Lockhart, 84 U.S. 570, 17 Wall. 570, 21 L.Ed. 657, and Dollar S.S. Lines v. Merz, 9 Cir., 68 F.2d 594, we think the court below had jurisdiction to render the judgment.

Appellant challenges the finding that appellees were damaged in the sum of $500. Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c provides: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * *" There was evidence that Charles was unable to pay the charges on the shipment because he did not have the money which was to be forwarded by Nester. The question therefore is when, under the laws of Honduras, the shipment was subject to confiscation. Appellant's interpretation of the laws is shown by the following quotation from its brief: "* * * the goods in question were entitled to six days' free time (Art. 7), if their custody was applied for (Art. 9). In default of such application the goods became the property of the state at the end of the six days' free time (Art. 41)." If this interpretation is correct, it is clear that the shipment was subject to confiscation six days after August 15, 1937, which was more than a week prior to the day when Nester attempted to send the money. On the other hand appellees contend that "all of the goods shipped by appellee come within the class of goods allowed *six days free deposit and fifteen days charge* * * * and not the six days free, six days charge; so assuming that the goods arrived in Honduras on the 15th day of August, 1937, they were not subject to confiscation until the 5th day of September, 1937," which was after Charles would have received the money had it been promptly delivered by appellant.

■ We express no opinion as to which of these opposing contentions is correct. The translation, which was introduced in evidence by appellant, regarding the second paragraph of Article No. 7, is either erroneous or incomplete. It may be that the omitted matter, if any, or the correct translation, would disclose the correct meaning. Under the circumstances, speculation is not a proper course of action. For purposes of this decision, we will assume, without so deciding, that appellant's contention is correct.

■ Appellant contends that the provision in the money order blank was a part of the tariff filed with the Interstate Commerce Commission, and as such limited the damages recoverable to the actual damage, not exceeding $500, and that without actual damage there could be no recovery. The question presented is one of interpretation of the provision, not of validity thereof.

There have been clauses construed which limit liability for damages at not more than a specified sum. Primrose v. Western Union Telegraph Co., 154 U.S. 1, 14 S.Ct. 1098, 38 L.Ed. 883; Postal Telegraph-Cable Co. v. Warren-Godwin Co., 251 U.S. 27, 40 S.Ct. 69, 64 L.Ed. 118; Western Union Tel. Co. v. Esteve Bros. & Co., 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094. In such cases, the damages are limited to the actual damages or the amount stipulated, whichever is less.

In Hart v. Pennsylvania Railroad Co., 112 U.S. 331, 5 S.Ct. 151, 28 L.Ed. 717, a carrier assumed a liability in the transportation of horses at "not exceeding two hundred dollars each". It was clearly intended there that the liability for loss or injury to the horses was confined to their actual value, but if it exceeded $200 each, then recovery was limited to that amount.

In Western Union Tel. Co. v. Czizck, 264 U.S. 281, 44 S.Ct. 328, 68 L.Ed. 682, a provision substantially identical to the one here was in question. It contained a provision limiting liability for damages, and a provision valuing a telegram at $50. The distinction between the two clauses was adverted to, the court saying, 264 U. S. at page 285, 44 S.Ct. at page 329, 68 L. Ed. 682: "We have not adverted to the first clause of the exemptions, limiting liability to the amount received for sending the message. Obviously this has a narrower scope than the valuation clause and we should hesitate to hold that it exonerated the defendant in this case. * * * " Although the damages greatly exceeded the agreed valuation, it was held that the claim was limited by the valuation clause to that sum. In Western Union Tel. Co. v. Priester, 276 U.S. 252, 257, 48 S.Ct. 234, 72 L.Ed. 555, the provision again contained these two clauses. No point was made concerning the valuation clause, and the limitation of liability clause was held applicable.

Here, the provision in question has a limitation of liability clause—"the company shall not be liable for damages * * * beyond the sum of five hundred dollars". The provision also contained a clause by which it was agreed that "the right to have this money order promptly and correctly transmitted and promptly and fully paid is hereby valued" at $500. Although appellant contends that the clause means that such right is valued at not "beyond the sum of" $500, the clause does not so state. It states that such right is valued at $500.

When Nester delivered the $150 to appellant, he had the right to have the money transmitted without unreasonable delay (Western Union Tel. Co. v. Crovo, 220 U.S. 364, 31 S.Ct. 399, 55 L.Ed. 498) and delivered to Charles. Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370. Because of appellant's acts, that right was destroyed, and Nester is entitled to recover its value, which the parties agreed was $500.

No contention is made that both clauses are for appellant's benefit, and that appellant had the option to choose which it would rely on. See The Ansaldo San Giorgio I v. Rheinstrom Bros. Co., 294 U. S. 494, 497, 55 S.Ct. 483, 79 L.Ed. 1016; compare: Sun Printing & Publishing Ass'n v. Moore, 183 U.S. 642, 22 S.Ct. 240, 46 L.Ed. 366. At any rate it is sufficient to say here that no election was made, even though appellant pleaded the provision. It still relies on both clauses, and attempts now to limit the valuation clause. For the reasons expressed, we think the judgment should be and is

Affirmed.

WILBUR, Circuit Judge (dissenting).

I dissent. In my opinion the District Court did not have jurisdiction and consequently our jurisdiction is limited to that of reversing the decision of the trial court. Jurisdiction is predicated upon diversity of citizenship. Plaintiffs, who are residents of California, join as defendants the Western Union Telegraph Company, a citizen of New York, T. J. Inie and certain other defendants sued by their fictitious names. The complaint contains no allegation concerning the citizenship or residence of the defendant T. J. Inie. The complaint alleges the joint negligence of all the defendants in delaying the payment of a money order procured by the plaintiffs and judgment is prayed for against them all. The defendants Western Union Telegraph Company and Thelma Ivie (sued and served herein as T. J. Inie) answered the complaint and denied the allegation of negligence and for separate defense set up the terms of the contract between the parties for the transmission of money and alleged that under that contract the Western Union Telegraph Company was not liable for delay, non-payment or underpayment of the money order by reason of negligence or otherwise beyond the sum of $500. The evidence did not show the citizenship of Thelma Ivie. The trial court delivered its opinion on November 9, 1938, wherein it was held that there was a breach of the contract for the transmission of the money order for $150, for which the Telegraph Company was liable for liquidated damages in the sum of $500. As to the defendant T. J. Inie the opinion states:

"Plaintiffs take nothing against the defendant T. J. Inie [Thelma Ivie]." The findings of fact and conclusions of law which followed the opinion, dated December 5, 1938, contained no reference to the defendant Thelma Ivie except the finding that "T. J. Inie was the duly appointed and acting employee of the Western Union Telegraph Company, a corporation, and was acting within the scope of her authority." And the following in the conclusions of law: "That Paul Nester and Juan Charles, co-partners plaintiff are entitled to recover the amount of five hundred dollars ($500.00) against the Western Union Telegraph Company only, and not against T. J. Inie." The judgment of the same date gave judgment "in the sum of Five Hundred ($500.00) Dollars against the Western Union Telegraph Company, a corporation, only, and for their costs taxed in the sum of $69.11. Cause dismissed as to T. J. Inie."

The majority opinion holds that the dismissal of the action as to T. J. Inie gave the court jurisdiction of the case. I cannot agree to this proposition. The decision in favor of T. J. Inie was one on the merits. The new rules in force at the time the judgment was rendered provide, rule 41, subdivision b, as follows: "* * * Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits." The trial court would have no jurisdiction of the action until the action was dismissed as to T. J. Inie for lack of jurisdiction. The dismissal (on the merits) was contemporaneous with and a part of the judgment against the Western Union Telegraph Company. In my opinion the judgment should be reversed for lack of jurisdiction.

If my associates agreed with me on this jurisdictional question it would be unnecessary to consider the effect of the contract for the transmission of the message and particularly those provisions thereof with reference to the limitation of liability. In view of the fact that the court has passed upon that question it is proper for me to add that I am not in accord with the opinion of the majority with relation to the effect of the contract for the transmission of the message. It is provided in this contract that the damages for non-delivery should not exceed the sum of $500. This provision taken alone is clearly a limitation of liability, but because of the language which follows this provision fixing the value of the right to have money orders transmitted at five hundred dollars, the majority holds that the agreement is one for the payment of liquidated damages. In other words, that a right belonging to the plaintiffs valued at $500 has been destroyed and that therefore by agreement the amount of recovery should be for that amount. There is no doubt that the language of the contract is susceptible of this construction, but such construction overlooks the historical background and the decisions of the courts and of the Interstate Commerce Commission upon which the terminology of the contract is based. Since jurisdiction over the transmission of interstate telegraph messages has been vested by Congress in the Interstate Commerce Commission by statute approved June 18, 1910, 36 Stat. 539, 544, the Supreme Court has had occasion to pass upon this question of the limitation of the liability of a telegraph company with relation to the valuation placed upon a message by the agreement of the parties. The Interstate Commerce Commission has permitted and required companies to fix a value upon the message transmitted for each unrepeated message at not less than $500.00. See Western Union Telegraph Co. v. Anderson, Tex.Civ.App., 245 S.W. 731. Such provisions have been considered by the Supreme Court. In the case of The Ansaldo San Giorgio I v. Rheinstrom Brothers Co., 294 U.S. 494, 55 S.Ct. 483, 484, 79 L.Ed. 1016, the Supreme Court had occasion to refer to the matter in a case dealing with a bill of lading limiting the liability of the carrier. In discussing the effect of the bill of lading the court referred arguendo to the two types of valuation clauses that had been in frequent use by common carriers and refers to a contract similar to that involved in the case at bar as follows: "One is a true limitation agreement. It recites that a sum named in the bill of lading is the agreed value of the goods, or their value per unit or per package, in the absence of the shipper's declaration of a higher value; that the rate is fixed with reference to the specified value, and if a greater be declared a higher rate will apply; that in consideration of the rate to be charged, the carrier's liability for loss or damage shall be limited to the stipulated

value. In case of loss or damage this clause enures to the carrier's, but not to the shipper's benefit. The latter can in no event recover more than his actual loss, but may have to take much less. *The damages are computed in the usual way without reference to the stipulation, but, if when so computed they exceed the agreed limit of value, no recovery of the excess may be had.* Such a stipulation, we have said, is not enforcible unless the shipper, for agreeing to such a limitation of the carrier's liability, receives a consideration consisting in the offer of a lower rate as against a higher rate offered for the service without such limitation; or, as has been said, the rate is tied to the release. Agreements of this kind are held to be reasonable and not offensive to the public policy against contracts relieving the carrier from its own negligence. The agreement as to value in consideration of carriage at the lower rate thus obtained is held to estóp the shipper from demanding damages in excess of the agreed value." (Italics mine.)

In Western Union Telegraph Company v. Czizek, 264 U.S. 281, 44 S.Ct. 328, 68 L. Ed. 682, referred to in the main opinion, the. court had under consideration a contract with the Western Union Telegraph Company for the transmission of an unrepeated telegram which, as stated in the main opinion, contained a provision almost identical in terms with that included in the contract of transmission of the money order in the case at bar. The provision is as follows: "In any event the Company shall not be liable for damages for any mistakes or delays in the transmission or delivery, or for the nondelivery, of this telegram, whether caused by the negligence of its servants or otherwise, beyond the sum of fifty dollars, at which amount this telegram is hereby valued, unless a greater value is stated in writing thereon at the time the telegram is offered to the Company for transmission, and an additional sum paid or agreed to be paid based on such value equal to one-tenth of one per cent. thereof." The Circuit Court of Appeals held that this contract was invalid so far as applied to a case of gross negligence and held the company liable for actual damages in the sum of $4,500 with interest at 7%. 9 Cir., 286 F. 478. The Supreme Court reversed the decision, holding that the claim was "limited to $50.00" by the above quoted terms of the contract. 264 U.S. 281, 44 S.Ct. 328, 68 L.Ed. 682.

Thus instead of treating the agreement as an agreement for liquidated damages in the sum of $50.00, the court treated it as a contract limiting the liability of the company. The question here involved has been considered by several state courts and in each instance since the assumption of jurisdiction by the United States over the transmission of interstate messages it has been held that the stipulated value of the message was the limit of liability for the actual damages suffered because of nondelivery. Western Union Telegraph Co. v. Anderson, Tex.Civ.App., 245 S.W. 731, decided in 1922; Western Union Telegraph Co. v. Bashinsky, Case & Co. (Alabama), 217 Ala. 661, 117 So. 289, decided in 1928; and Wernick et al. v. Western Union Telegraph Co., 290 Ill.App. 569, 9 N.E.2d 72, decided in 1937.

These decisions discuss the origin and effect of the stipulated value of a message. I think that they are correct, that the valuation of $500 stated in the contract is for the purpose of limiting, but not of fixing the damages.

The judgment should be reversed for lack of jurisdiction in the trial court.