WESTERN UNION TELEGRAPH COMPANY *v.* NESTER ET AL.

No. 597. Argued March. 8, 1940.—Decided April 22, 1940.

Mr. *Francis R. Stark,* with whom *Messrs. Alfred Sutro,* *Oscar Lawler,* and *Francis R. Kirkham* were on the brief, for petitioner.

Mr. *Earl C. Demoss,* with whom Mr. *George J. Hider* was on the brief, submitted for respondents.

Mr. Justice McReynolds delivered the opinion of the Court.

Respondents, Nester and Charles, are partners in mining operations near Aramecina, Republic of Honduras. September 1, 1937, at Los Angeles, California, petitioner, the Telegraph Company, in the ordinary course of business, received from Nester one hundred and fifty dollars for transmission by unrepeated message·and delivery to Charles at Aramecina. It failed so to do.

In a "Complaint for damages for breach of duty" filed against petitioner in the District Court, Southern District, California, respondents claimed the failure to deliver resulted from gross negligence and that as a direct consequence they suffered specified losses amounting to $7,600. For that sum they asked judgment.

Petitioner.denied liability and.as an affirmative defense alleged—

"The money order referred to in the plaintiff's complaint was delivered to and accepted by the defendants subject to the terms of the standard money order contract of The Western Union Telegraph Company, a copy of which is hereto annexed."

584

It is not now denied that this standard form had been duly filed with the Federal Communications Commission and was treated by the parties as a statement of the contract between them. Certain of the conditions contained therein are printed below.[1]

[1] "Money Orders Are Subject to the Following Conditions:

"Domestic orders will be canceled and refund made to the sender if payment cannot be effected within 72 hours after receipt at paying office (Ellis Island, N. Y., excepted). Orders payable at Ellis Island will be canceled after the expiration of five days.

"In the case of a Foreign Order the Foreign equivalent of the sum named in the order will be paid at the rate of exchange established by the Company or its agents on the date of the transfer.

"In the case of a Foreign Order the equivalent, in the currency of the country of payment, of the sum named will be purchased promptly; and if for any reason payment cannot be effected, refund will be made by the Company and will be accepted by the depositor on the basis of the market value of such foreign currency in American funds, at New York, on the date when notice of cancelation is received there by the Company from abroad.

"When the Company has no office at destination authorized to pay money, it shall not be liable for any default beyond its own lines, but shall be the agent of the sender, without liability, and without further notice, to contract on the sender's behalf with any other telegraph or cable line, bank or other medium, for the further transmission and final payment of this order:

"In any event, the company shall not be liable for damages for delay, nonpayment or underpayment of this money order, whether by reason of negligence on the part of its agents or servants or otherwise, beyond the sum of five hundred dollars, at which amount the right to have this money order promptly and correctly transmitted and promptly and fully paid is hereby valued, unless a greater value is stated in writing on the face of this application and an additional sum paid or agreed to be paid based on such value equal to one-tenth of one per cent thereof.

"In the event that the company accepts a check, draft or other negotiable instrument tendered in payment of a money order, its obligation to effect payment of the money order, shall be conditional and shall cease and determine in case such check, draft or other negotiable instrument shall for any reason become uncollectible, and in any event the sender of this money order hereby agrees to hold

The point for determination here arises out of the following condition—

"In any event, the company shall not be liable for damages for delay, non-payment or underpayment of this money order, whether by reason of negligence on the part of its agents or servants or otherwise, beyond the sum of five hundred dollars, at which amount the right to have this money order promptly and correctly transmitted and promptly and fully paid is hereby valued, unless a greater value is stated in writing on the face of this application and an additional sum paid or agreed to be paid based on such value equal to one-tenth of one per cent thereof."

The cause was tried by the court without a jury upon the pleadings and evidence. It found as matter of fact

"That it is not true that by reason of the failure of the defendant, Western Union Telegraph Company, to transmit and to deliver and to pay promptly said money order as aforesaid, the plaintiffs have suffered damages in the sum of Seventy-six hundred ($7,600.00) Dollars; the court finds, however, that by reason of such failure, the plaintiffs have suffered and sustained damages, loss and injury in the sum of Five Hundred ($500.00) Dollars."

Evidently it was not intended by this finding to declare actual damages had been shown, as respondents'

the telegraph company harmless from any loss or damage incurred by reason or on account of its having so accepted any check, draft or negotiable instrument tendered in payment of this order.

"All messages included in money orders are subject to the following terms: . . .

"The company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the unrepeated-message rate beyond the sum of five hundred dollars; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the repeated-message rate beyond the sum of five thousand dollars, unless specially valued; nor in any case for delays arising from unavoidable interruption in the working of its lines; nor for errors in cipher or obscure messages."

counsel suggest. After pointing out the lack of any evidence of actual loss resulting from the alleged negligence, the court's opinion asserts—"So that, assuming that the action is in tort, there is no substantial proof of any of the special damages claimed. However, the plaintiffs are not without redress."

The court found as matter of law "That the condition on the application for the transmission of the money order filed by The Western Union Telegraph Company with the Federal Communications Commission limiting its liabilities to five hundred ($500) dollars is a valid undertaking. That Paul Nester and Juan Charles, co-partners plaintiff are entitled to recover the amount of five hundred dollars ($500.00) against the Western Union Telegraph Company . . . without prejudice to their right to sue for and recover the one hundred and fifty ($150) dollars" accepted for transmission.

The condition relative to liability for $500.00, quoted above, was construed by the trial court as "a provision for liquidated damages, which entitled the sender to recovery of the minimum amount of five hundred dollars in the absence of any proof or without any offer of proof." And it said, "Hence although we are unable to award to the plaintiffs the special damages they ask, they are entitled, under the facts alleged and proved, to the sum stipulated as liquidated damages in the contract. . . . Here the plaintiffs, under the facts alleged in the complaint and proved at the trial, have shown themselves entitled to recovery, even though they were unable to prove the damages they sought." 25 F. Supp. 478.

The judgment against petitioner was affirmed by the Circuit Court of Appeals. 106 F. 2d 587. The opinion there declares—

"Appellant contends that the provision in the money order blank was a part of the tariff filed with the Interstate Commerce Commission, and as such limited the

damages recoverable to the actual damage, not exceeding $500, and that without actual damage there could be no recovery. The question presented is one of interpretation of the provision, not of validity thereof."

Also—"Here, the provision in question has a limitation of liability clause—'the company shall not be liable for damages . . . beyond the sum of five hundred dollars.' The provision also contained a clause by which it was agreed that 'the right to have this money order promptly and correctly transmitted and promptly and fully paid is hereby valued' at $500. Although appellant contends that the clause means that such right is valued at not 'beyond the sum of' $500, the clause does not so state. It states that such right is valued at $500."

"When Nester delivered the $150 to appellant, he had the right to have the money transmitted without unreasonable delay (Western U. Teleg. Co. v. Crovo, 220 U. S. 354) and delivered to Charles. Moore v. New York Cotton Exchange, 270 U. S. 593. Because of appellant's acts, that right was destroyed, and Nester is entitled to recover its value, which the parties agreed was $500."

By its petition for certiorari the Telegraph Company presents a single question—"Does the limitation of liability provision in petitioner's money order tariff—which is substantially the same as that in its telegraph tariff—constitute a liquidated damage provision which would automatically make petitioner liable for damages in the fixed sum of $500, in case of default in service, regardless of whether or not the sender had sustained any actual damage, or is the provision rather one which fixes a maximum limit within which damages may be proved?"

We think the provision in question was not intended to prescribe a definite liability (liquidated damages), but is a limitation upon the maximum permissible recovery for

actual loss or damage properly alleged and shown by evidence. The courts below erred in ruling otherwise.

Considering what has been ruled in *Western Union Telegraph Co.* v. *Esteve Bros. & Co.* (1921), 256 U. S. 566; *Western Union Telegraph Co.* v. *Czizek* (1924), 264 U. S. 281; *Western Union Telegraph Co.* v. *Priester* (1928), 276 U. S. 252, the validity of the condition before us is not open to serious doubt; and viewed in the light of its history and evident purpose it must be interpreted as imposing a limitation upon the amount which may be recovered. See, Unrepeated Message Case, 44 I. C. C. 670, 675, and Limitations of Liability in Transmitting Telegrams, 61 I. C. C. 541, 550.

The interpretation of the condition approved below would permit a recovery of five hundred dollars irrespective of the sum deposited for transmission and without requiring the sender to show any loss whatsoever. A mere failure to transmit a small sum deposited with the company might impose a heavy and utterly unreasonable burden upon the common carrier although the patron had suffered no loss. This does not harmonize with the declared purpose of the statute to impose just and reasonable rates.

The precise question here involved has been ruled upon by two intermediate courts. *Miazza* v. *Western Union Telegraph Co.* (1935), 50 Ga. App. 521; 178 S. E. 764; and *Wernick* v. *Western Union Telegraph Co.* (1937), 290 Ill. App. 569, 573–574; 9 N. E. 2d 72, 74. In the first the Court of Appeals of Georgia sustained a demurrer to a complaint which definitely sought to recover five hundred dollars as liquidated damages for failure properly to transmit a message. The opinion in the second cause well said—

"Although this particular clause has been a part of the rules, regulations, classifications and tariffs of the tele-

graph company since 1921, it has never been interpreted as a liquidated damage provision, and no cases are cited which would justify such an interpretation. Reading the agreement as a whole, as it must be read under the fundamental rules of construction, and taking into consideration the historical reasons for changing the legal relationship between telegraph companies and their patrons through federal legislation, and the effect thereof as stated by the court in *Western Union Telegraph Co.* v. *Esteve Bros. & Co.* and the *Priester* case, *supra*, we think the court was unwarranted in interpreting the language employed as a liquidated damage clause. In so doing, it evidently failed to consider the intent, purpose and meaning of the entire clause, and considered only the words 'at which amount the right . . . is hereby valued.' The fair interpretation of the provision as a whole must necessarily give effect to the plainly expressed clauses which precede and follow the so-called liquidated damage provision, stating that *'in any event, the company shall not be liable for damages* for delay, nonpayment or underpayment of this money order, whether by reason of negligence on the part of its agents, servants, or otherwise, *beyond the sum of $500 . . . ,* unless a greater value is stated in writing on the face of this application and an additional sum paid or agreed to be paid, based on such value, equal to one-tenth of 1 per cent thereof.' The provision, when read in its entirety, was clearly intended to fix, not a definite liability, but a maximum liability or agreed valuation upon which the rate to be paid for the shipment or carriage is to be collected."

The challenged judgment must be reversed. The cause will be remanded to the District Court for further proceedings in harmony with this opinion.

*Reversed.*