WEISS v. DISTRICT TITLE INS. CO.

DISTRICT TITLE INS. CO. v. WEISS.

Nos. 7625, 7626.

United States Court of Appeals for the District of Columbia.

Decided May 19, 1941.

George E. Sullivan, of Washington, D. C., for Freeman Weiss.

Morris Simon, Lawrence Koenigsberger, and Eugene Young, all of Washington, D. C., for District Title Ins. Co. and others.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The declaration was for money had and received. The answer admitted the obligation but pleaded payment. Only the third and the fifth pleas are involved, the others having been withdrawn. On plaintiff's replication to the third, the court "directed a verdict against defendants." It submitted the fifth to the jury; there was a verdict for defendants, and judgment was entered accordingly. After judgment plaintiff moved to set it aside and to have judgment in his favor. The motion was denied, plaintiff appeals, and defendants have filed a cross appeal from the "direction of a verdict" on the replication to the third plea. None of the evidence appears in the record. The issues relate to the substantive sufficiency of the pleas and procedural matters arising from the court's disposition of them.

The declaration set forth that defendants had collected for plaintiff's account $4,000, the amount of a real estate loan (which they had negotiated for him), had disbursed $1,927.29 at his direction, and had failed and refused to pay over the remaining $2,072.71, for which with interest judgment was asked.

The third plea alleged that payment had been made by delivering, at plaintiff's direction, to Mitchell Quick, a check payable to plaintiff's order, which Quick endorsed in plaintiff's name, and that on presentment the drawee bank paid the amount to the holder. It was not alleged specifically that Quick had authority to endorse the check. A demurrer to the plea was overruled. Plaintiff's replication set forth that the endorsement was unauthorized and a forgery. At the end of the evidence the court "directed a verdict" against defendants "on both replications [1] to the third plea."

The fifth plea alleged the same facts as the third, and others to show that the check actually was applied in payment of a debt then due from plaintiff to a corporation, Mitchell Quick, Inc., by virtue of a building construction contract. The plea was amended at the close of the evidence so as to state that the debt was due when the check was paid "or shortly thereafter." [2] There was no replication to this plea, issue was joined, and the verdict, upon which judgment was entered, was for defendants. The appeal and cross appeal followed.

Plaintiff urges that both pleas were insufficient to constitute a defense, that they were in substance identical, and that the court's "direction of a verdict" on the replications to the third plea disposed of all issues arising on it and the fifth plea as well, so that submission of the latter to the jury was error. Defendants say that each plea was good in substance, that the two were not identical, and that, even if the third were legally insufficient, the fifth was good and there was no error in submitting it to the jury. Perhaps from superabundance of caution they urge on the cross appeal that it was error to "direct a verdict" against them "on the replications to the third plea." We think the judgment should be affirmed.

 In our view, the fifth plea set forth a valid defense, and the court properly submitted to the jury the issues which it raised. Since the evidence is not before us, we must assume that defendants proved their allegations. These were in chief that at plaintiff's direction they delivered their check payable to his order to Quick, who endorsed it in plaintiff's name and delivered it to plaintiff's debtor, which received the proceeds and applied them in payment of the obligation, due then or shortly thereafter.

Since there was no replication to this plea alleging that the endorsement was forged or without authority, and none of the evidence is here, these facts in connection with others set forth in the pleadings by way of detail might be taken as sufficient to sustain an inference by the jury that plaintiff had authorized Quick to en-

---

[1] Apparently there were two, but only one appears in the record.

[2] Presumably the amendment was made to bring the plea into conformity with the proof, but since the evidence is not before us and there is no specific finding con- cerning the matter, it does not appear whether the obligation had matured when the check was paid or not until a later date. Maturity was fixed by the contract as of the date when the house would be under roof. The terms of the contract are set out in the opinion below.

dorse and deliver the check to Mitchell Quick, Inc. But we do not decide that question or place the decision on so narrow foundation. Neither is it necessary to decide whether Quick's endorsement was a forgery or merely lacking in authority as between himself and plaintiff.[3] The issue here is not Quick's liability or that of the drawee bank. Whatever plaintiff's rights may be as to either or both, concerning which we express no opinion,[4] and assuming that the endorsement was unauthorized, in the circumstances alleged in the plea the risk of loss, if any, resulting from Quick's action should fall on plaintiff rather than defendants.

Under the plea Quick had authority to receive the check and the corporation had the right to have the amount it represented paid over to it, not merely as a general obligation, but as a fund specifically appropriated for that purpose by the contract between it and plaintiff. The plea alleged that under the contract the company agreed to build a residence for plaintiff on a vacant lot, for which he agreed (1) to pay a specified sum of money and in addition, when the house should be under roof, (2) to convey other improved premises and (3) to assign to the company "the net difference" between a previous loan and a new one on the property to be conveyed. The new loan apparently was the one negotiated for plaintiff by defendants, and the plea alleges that the $2,072.71 for which this suit was brought was "the net difference" between the two loans which the contract required plaintiff to pay to the company. It is alleged also that when the check was paid "or shortly thereafter," the house was under roof, in other words, the debt was due.

Taking these facts as proved, the fund for which plaintiff sues was earmarked contractually for the very purpose to which it has been applied. However, defendants do not advance any theory of a trust, and we need not decide whether one existed, assuming defendants had notice of the terms of the contract, as seems probable. Regardless of that, the facts clearly show that plaintiff sustained no legal injury by the payment.

The money has been applied in payment of plaintiff's debt. He has had the benefit of the payment as if he had made it himself. As between him and the company he had no right to apply the fund in any other way, if the condition that the house should be under roof was fulfilled. This was done either when payment was made or shortly afterward. If there was any breach of duty owing to plaintiff by Quick or defendants, it is difficult to see how he was injured by it. At most he was deprived only of having the money paid over to him and turning right around and paying it to the company, which has received it, and possibly of the right to have the payment made "shortly after" it was made.[5] Assuming that such technical violations of right may have taken place, no substantial injury resulted. Whether they would have sustained a verdict and judgment for nom-

---

[3] The only allegation shown by the record in this respect was made in the "additional replication" to the third plea, which was as follows: "For a further replication to defendants' third plea, plaintiff says that plaintiff did not endorse, or authorize the endorsement of, his name upon the check referred to in said plea, and that what purports to be plaintiff's endorsement or authorized endorsement thereon is a forgery."

The evidence is not before us, and the court's peculiar disposition of the replication and plea leaves doubt as to the meaning and effect of the ruling. But if it is taken to mean that the evidence conclusively established that the endorsement was a forgery and that this vitiated the third plea, the result will not be affected, in the view we take of the case.

[4] Quick may have acted bona fide, but mistakenly, thinking he had authority to endorse. The bank may have known all the facts alleged in the fifth plea. As-

suming the action of each was unauthorized, the question would remain whether it had caused injury to the plaintiff since he received the benefit of the payment. Cf. Industrial Savings Bank v. People's Funeral Service Corp., 54 App.D.C. 259, 296 F. 1006, 1924.

[5] Cf. note 2 supra. Assuming that the evidence showed that the house was not under roof until after the check was paid, this would not affect the fact that plaintiff received the benefit of the payment. He would not be entitled to interest from defendants for the period between the two dates, since his direction that they deliver their check to Quick and their compliance deprived them of the use of the money, whether or not he had the use of it during that interim. His right to recover interest, if any, would be against Mitchell Quick, Inc., on account of its having received payment in advance of maturity.

inal damages need not be determined.[6] But they could hardly have given cause for recovering more. Crane v. Postal Telegraph Cable Co., 48 App.D.C. 54, 65, 1918, and Industrial Savings Bank v. People's Funeral Service Corp., 54 App.D.C. 259, 296 F. 1006, 1924, are clear and, we think, controlling authority on this issue.[7]

The damage feature is sufficient to dispose of the case on the merits. But plaintiff finds difficulty in making out a breach of duty. He does not urge that Quick was defendants' agent. If he was agent for anyone, it was for plaintiff or for Mitchell Quick, Inc. Yet plaintiff says defendants should be responsible for his misconduct, assuming his act was wrongful. This contention is made, though defendants followed plaintiff's instructions in every respect. They delivered the check to Quick by his order. He, rather than they, made it possible for Quick to present the check and have the proceeds paid to the company.[8] But plaintiff seeks to charge them with additional duty on the basis of the rule that a drawee bank remains liable to the drawer of a check paid under a forged endorsement.[9] From this it is said that defendants, as plaintiff's agents, owed him the duty to compel the bank to recredit their account, presumably in order that they might pay it over again to plaintiff. Apart from the fact that there is nothing to show when, if ever, prior to this suit, defendants acquired knowledge of the alleged forgery, the argument assumes that the bank remained liable to defendants for the full amount of the check.[10] This in turn assumes that the proceeds were not applied for defendants' benefit, which again assumes that they were not applied for plaintiff's benefit. This merry-go-round merely brings us back again to the fact that plaintiff has sustained no injury by the payment.

In view of what has been said, it is not necessary to determine whether Quick had apparent authority to endorse the check and became in effect an agent for collection as far as defendants were concerned. In several cases where the agent had authority to collect, but none to endorse commercial paper payable to his principal, it has been held that as between the principal and the drawer delivery of the check to the agent constitutes payment, though he endorses it in the principal's name, obtains payment and fails to account for the proceeds.[11] These cases would be strongly persuasive in defendants' favor, if it were necessary to rely on them.

Only brief attention need be given the procedural questions.

---

[6] Cf. Watson v. Southern Ry., 104 S.C. 204, 88 S.E. 461, 1916. The action for money had and received is "in its nature a substitute for a suit in equity; and * * * to be determined by the application of equitable principles." Myers v. Hurley Motor Co., 273 U.S. 18, 24, 47 S.Ct. 277, 278, 71 L.Ed. 515, A.L.R. 1181, 1927. Actual damage appears to be essential to recovery. Western Union Telegraph Co. v. Nester, 309 U.S. 582, 60 S.Ct. 769, 84 L.Ed. 960, 128 A.L.R. 628, 1940; McAllister v. Clement, 75 Cal. 182, 16 P. 775, 1888; Uppinghouse v. Mundel, 103 Ind. 238, 2 N.E. 719, 1885; Watson v. Southern Ry., supra.

[7] See, also, Western Union Telegraph Co. v. Nester, 309 U.S. 582, 60 S.Ct. 769, 84 L.Ed. 960, 128 A.L.R. 628, 1940; Washington Mechanics' Savings Bank v. District Title Insurance Co., 62 App.D.C. 194, 196, 65 F.2d 827, 1933; McAllister v. Clement, 75 Cal. 182, 16 P. 775, 1888; Uppinghouse v. Mundel, 103 Ind. 238, 2 N.E. 719, 1885; Watson v. Southern Ry., 104 S.C. 204, 88 S.E. 461, 1916. See, also, the "agent for collection" cases cited in note 11 infra.

[8] In view of the equitable quality of the action, cf. note 6 supra, the maxim concerning innocent parties, one of whom makes possible the loss, appears not inapplicable here to plaintiff. Cf. McFadden v. Follrath, 114 Minn. 85, 130 N.W. 542, 544, 37 L.R.A.,N.S., 201, 1911: "If either the drawer or payee must suffer because of the dishonesty of the agent, the one who designated him to receive the check and intrusted him with it should suffer, rather than the drawer, who had no voice in the selection of such agent, and who is in no way responsible for his acts."

[9] Cf. D.C.Code (1929) tit. 22, § 24, Negotiable Instruments Law § 23.

[10] But cf. Industrial Savings Bank v. People's Funeral Service Corp., 54 App. D.C. 259, 296 F. 1006, 1924.

[11] McFadden v. Follrath, 114 Minn. 85, 130 N.W. 542, 1911; Burstein v. Sullivan, 134 App.Div. 623, 119 N.Y.S. 317, 1909; Brown v. Grimes, 74 Ind.App. 655, 129 N.E. 483, 1921; Indemnity Mutual Marine Assurance Co. v. Powell & O'Rourke Grain Co., 216 Mo.App. 673, 271 S.W. 538, 1925; Union House Furn. Co. v. National Bank of Commerce, Mo. App., 53 S.W.2d 1067, 1932; Notes (1935) 94 A.L.R. 786.

■ From what has been said, it is clear that the third and fifth pleas were not identical. The principal, and important, difference is that the latter, in addition to the facts alleged in the former, set forth others sufficient to show that the funds were applied for plaintiff's benefit and therefore he suffered no legal injury. Whether the third plea was good or bad in substance need not be determined. Assuming that it was insufficient, the court's "direction of a verdict" upon the replications to it had no relation to the question of injury. Even if it amounted to a ruling that on the evidence Quick had no actual authority to endorse and his endorsement was a forgery, this did not affect the validity of the fifth plea or determine the issues it raised. It set forth a valid defense, even if the endorsement was forged. Accordingly, the court was not precluded from submitting the issues on the fifth plea to the jury by its "direction of a verdict" for defendants as to the third.

■ Defendants' counsel raises interesting questions as to "direction of a verdict" on replications to the third plea, both in answer to plaintiff on the appeal and on the cross appeal. The procedure appears irregular. The record discloses this phase of the case in the following form as the concluding paragraph of the judgment of the court:

"Wherefore, it is adjudged that said plaintiff take nothing by this action, that said defendants go hence without day, be for nothing held and recover of plaintiff their costs of defense. (Note: Verdict directed by court against defendants on both replications to the third plea)"

It is clear that the court did not intend the parenthetical "Note" to contradict the remainder of the judgment, in other words to direct a verdict for the plaintiff and at the same time to render judgment for defendants upon a verdict returned by the jury in their favor. At most, the effect of the "direction" could be only to eliminate the third plea from consideration of the jury, not to take the case from them entirely. If there was error in this respect it could not have been prejudicial to plaintiff, nor can it be so to defendants in view of the verdict and judgment in their favor. It may be noted also that nothing in the record purports to show that judgment was entered upon the "directed verdict."

Defendants also urge that there is nothing before this court for review, in view of the fact that plaintiff did not challenge the sufficiency of the fifth plea until after judgment. Cf. Rule 50(b), Fed. Rules of Civil Procedure, 28 U.S.C.A. following section 723c. In view of the disposition on the merits, it is unnecessary to consider the question.

■ Since there was no judgment entered upon the "directed verdict" relating to the third plea and none was intended, there is nothing before us on the cross appeal, which therefore must be dismissed.

The judgment from which plaintiff appeals is affirmed.