## RAILWAY EXPRESS AGENCY v. HUNT-RESS, to Use of ROYAL INS. CO., LIMITED.
### No. 466.

Municipal Court of Appeals for the District of Columbia.

Feb. 11, 1947.

---

John E. Powell, of Washington, D. C. (Arthur P. Drury and John M. Lynham, both of Washington, D. C., on the brief), for appellant.

Francis P. Noonan and Rexford M. Bloomgren, both of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

In April 1944 George S. Huntress, then in the United States Army and stationed in Louisiana, delivered a saxophone, case and accessories, hereinafter referred to as the saxophone, to Railway Express Agency for transportation to himself at his home in Washington, D. C. He was named both as consignor and consignee in the uniform express receipt, which stated the declared value of the saxophone to be $400. Delivery of the saxophone was not made promptly and Mrs. Katherine V. Huntress, mother of George, made claim for loss against the Royal Insurance Company, with whom she had a policy of insurance on the saxophone. In July 1944 the insurance company paid her $400 and she executed a so-called "loan receipt" which in effect subrogated the insurance company to her rights.

In January 1945 the express company, having located the saxophone, tendered it to George Huntress but he refused to accept it. Thereafter this action was brought by Mrs. Huntress, to the use of the insurance company, against the express company, for $400. At trial defendant tendered the saxophone to George S. Huntress, Mrs. Huntress and the insurance company, and they all rejected it. The trial court awarded plaintiff judgment for $400 and the express company has appealed.

Appellant's first point is that neither Mrs. Huntress nor the insurance company has any claim against the express company. Since the insurance company's claim is merely as subrogee or assignee of Mrs. Huntress, our only concern is her right to maintain the action.[1] The evidence showed that she was not the owner of the saxophone, and that it belonged to George who had acquired it some time previously in an exchange for another saxophone. Since Mrs. Huntress was not the owner of the saxophone and had no contractual relations with the express company, her right to maintain the action must rest on one or both of two grounds, namely, (1) that she was the mother of the owner, (2) that she had purchased insurance on the saxophone.

At the time George Huntress acquired the saxophone, and at the time his mother insured it and received the payment from the insurance company, he was a minor, and at the time of shipment he lacked about eight months of reaching his majority. When the saxophone was tendered and rejected and when suit was filed, he was over twenty-one years of age. Assuming that Mrs. Huntress was the natural guardian of her son during his minority, nevertheless she had no title to his property.[2] Certainly, after he became of age she had no authority to institute legal ac-

[1] Phoenix Insurance Co. v. Erie & Western Transp. Co., 117 U.S. 312, 6 S.Ct. 750, 29 L.Ed. 873.

[2] Baltimore and Potomac Railroad Company v. Taylor, 6 App.D.C. 259; McKinnon v. First Nat. Bank of Pensa-cola, 77 Fla. 777, 82 So. 748, 6 A.L.R. 111; Pittsburg, C., C. & St. L. Ry. Co. v. Healey, 170 Ill. 610, 48 N.E. 920; Ferguson v. Phoenix Mut. Life Ins. Co., 84 Vt. 350, 79 A. 997, 35 L.R.A.,N.S., 844.

tion on his behalf. Indeed, the suit does not purport to be by her as guardian or as next friend or for his benefit. The record shows the property to be that of the son and we find nothing in the record to sustain the mother's right to sue in respect to that property or on any contract made by the son respecting such property.

▮ The record fails to show the type of insurance carried or why it was carried by the mother. The mere fact that the mother carried insurance on the saxophone and collected on the insurance gave her no right in or title to the property. We see no ground for sustaining an action by Mrs. Huntress against the express company.

·The foregoing would be sufficient ground to reverse the judgment, but since the express company concedes there was unreasonable delay in the delivery and that it is liable to the owner for damages caused by the delay, we assume an action will hereafter be brought by the son, and therefore we consider the question of damages. Judgment in the present case was rendered on the theory that recovery should be allowed for full value of the article and that such was $400. In this there was error.

▮ In the first place, there was no evidence as to the value of the saxophone, its original cost, its type, quality or condition either at the time when purchased or at the time when shipped. Its declared val-

ue on the express receipt was $400; but such declaration does not fix its value or constitute a basis for determination of value.[3] Even more important, the express company was not liable for the value of the saxophone. Prior to suit the instrument had been located and tendered to the owner. He rejected it because in the meantime he had purchased another instrument. However, it is well established that unreasonable delay in transporting and delivering does not amount to a conversion by the carrier, making it liable for the value of the goods. The owner must accept the goods and is entitled to recover damages for the loss caused by the delay.[4] There was no evidence here of such damage. The measure of damages will vary with the circumstances. Generally, where goods are intended for sale, the measure of damages for delay is the difference between the market value when they should have been delivered and the market value when in fact delivered.[5] Where the goods are intended for use by the shipper as in cases of machinery household goods, wearing apparel, etc., ordinarily the measure of damages is the useful or rental value of the articles during the period of delay.[6] The proper measure of damages can only be ascertained when action is brought by the owner and evidence offered of the loss he sustained by reason of the delay.

Reversed.

[3] The Ansaldo San Giorgio I v. Rheinstrom Bros. Co., 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016. Cf. Western Union Telegraph Co. v. Nester, 309 U.S. 582, 60 S.Ct. 769, 84 L.Ed. 960, 128 A.L.R. 628.

[4] Eastern Shore of Virginia Produce Exchange v. New York Central R. Co., 4 Cir., 97 F.2d 565; Chicago, R. I. & P. Ry. Co. v. Albert Pfeifer & Bro., 90 Ark. 524, 119 S.W. 642, 22 L.R.A.,N.S., 1107; Southern Express Co. v. Hanaw, 134 Ga. 445, 67 S.E. 944, 137 Am.St.Rep. 227; Higgins v. United States Express Co., 83 N.J.L. 398, 85 A. 450; Moody v. Southern Ry. Co., 79 S.C. 297, 60 S.E. 711; Illinois Central R. Co. v. Johnson & Fleming, 116 Tenn. 624, 94 S.W. 600.

[5] Pennsylvania R. Co. v. Wm. H. Muller & Co., 4 Cir., 15 F.2d 535, certiorari denied, 273 U.S. 748, 47 S.Ct. 449, 71 L.Ed. 872; American Ry. Express Co. v. Ewing Thomas Converting Co., 3 Cir., 292 F. 335; Stern, McGiveny & Co. v. Keeshin Motor Express Co., 310 Ill.App. 337, 34 N.E.2d 81; Okin v. Sullivan, 307 Mass. 227, 29 N.E.2d 762.

[6] Atchison, T. & S. F. Ry. Co. v. Sun Drilling Co., 65 Okl. 239, 165 P. 1133; Pecos & N. T. Ry. Co. v. Grundy, Tex. Civ.App., 171 S.W. 318; Bridge v. New York Central & H. R. R. Co., 88 Misc. 35, 150 N.Y.S. 146.