# WESTERN UNION TELEGRAPH COMPANY *v.* CZIZEK.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 300. Argued February 26, 27, 1924.—Decided March 10, 1924.

1. A contract between a telegraph company and the sender of an unrepeated interstate message, on a form filed with and approved by the Interstate Commerce Commission, valued the message at $50.00 in default of any higher valuation specified by the sender and paid for at a higher rate, and relieved the company of liability beyond that sum for mistakes or delays in the transmission or delivery, or for the non-delivery of the message, caused by the negligence of its servants or otherwise. *Held* valid and applicable although the message was never transmitted, due to the inadvertence of a receiving clerk in filing it in the wrong place, and to subsequent mistaken assurances that it had been sent. P. 284.

2. *Quaere:* Whether this agreed limitation of liability would not have applied even if the failure to transmit had been attributable to gross negligence? P. 285.

3. The reasonableness of such a limitation is determined as of the date of the contract and not by later, prospective rules of the Interstate Commerce Commission. *Id.*

4. *Semble,* that another printed stipulation on the telegram limiting the company's liability for nondelivery, etc., of any unrepeated message to the amount received for sending it, was invalid in this case. *Id.*

5. A stipulation on a telegram exempting the company from liability if claim is not presented in writing within sixty days after filing of the message for transmission, *held* inapplicable where the filing of the message, by the plaintiff's agent, was unknown to the plaintiff during the sixty days, and where the plaintiff thereafter was diligent in presenting his claim. P. 286.

286 Fed. 478, reversed.

CERTIORARI to a judgment of the Circuit Court of Appeals affirming a judgment of the District Court for the plaintiff Czizek in an action against the Telegraph Company for damages resulting from the failure to forward and deliver a telegram.

*Mr. Francis R. Stark* and *Mr. Beverly L. Hodghead,* with whom *Mr. J. H. Richards, Mr. Oliver O. Haga, Mr. Joseph L. Egan* and *Mr. J. Julien Southerland* were on the briefs, for petitioner.

*Mr. Richard H. Johnson,* with whom *Mr. Carey H. Nixon* was on the brief, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a suit against the Telegraph Company for failure to forward and deliver to the plaintiff a message from one Jones, found by the Court below to have been acting as agent for the plaintiff in the matter. The District Court found for the defendant, but the judgment was reversed by the Circuit Court of Appeals, 272 Fed. 223, and at a second trial, in deference to the Circuit Court of Appeals, a judgment was entered for the plaintiff, which was affirmed. 286 Fed. 478. Certiorari granted. 262 U. S. 739.

The plaintiff owned fifty shares of stock in the Idaho National Bank at Boise, Idaho. Miller, vice president of the bank, was buying the stock with a view to a merger. He talked with the plaintiff and told him that he would buy his stock and that they would have no difficulty in agreeing on the price. The plaintiff told this to Jones, an attorney at Boise, who owned fifteen shares, asked Jones to act for him, saying that they would sell their stock together, and told Miller that Jones would represent him. Later Miller called on Jones and at Miller's request Jones, on November 30, 1917, wrote on a Western Union form—directing the Company to send, " subject to the terms on

back hereof", the following telegram addressed to the plaintiff at 5767 Shafter Avenue, Oakland, California, where the plaintiff lived: " Miller advises Idaho National sold to Pacific offers me ninety dollars per share otherwise wait year and chances of liquidation says if fails to get two thirds stock liquidation will follow. Will you take ninety dollars per share for yours. I am inclined to accept offer for mine. Answer." The form had been filed with the Interstate Commerce Commission and the Commission had approved the provisions and rates that it set forth. Among the terms on the back of the form were the following: " To guard against mistakes or delays, the sender . . . should order it REPEATED, that is, telegraphed back to the originating office for comparison," an additional half rate being charged. " Unless otherwise indicated on its face, THIS IS AN UNREPEATED TELEGRAM AND PAID FOR AS SUCH, in consideration whereof it is agreed . . . 1. The Company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any UNREPEATED telegram, beyond the amount received for sending the same . . . 2. In any event the Company shall not be liable for damages for any mistakes or delays in the transmission or delivery, or for the nondelivery, of this telegram, whether caused by the negligence of its servants or otherwise, beyond the sum of FIFTY DOLLARS, at which amount this telegram is hereby valued, unless a greater value is stated in writing hereon at the time the telegram is offered to the Company for transmission, and an additional sum paid or agreed to be paid based on such value equal to one-tenth of one per cent. thereof."

This telegram was an unrepeated message of the class known as night letter, and was not specially valued or paid for upon a value in excess of $50. It was the duty of the receiving clerk, Margaret Brown, to indorse her in-

itials, the filing time and the amount of toll received, and to place the message on the sending hook for transmission. By inadvertence, although a competent clerk, she put it in a file of earlier messages instead of upon the hook, and it was not sent. The next day Jones's son inquired at the telegraph office for an answer and being told that there was none, asked if they had sent the telegram and was answered yes. On December 3 he asked again and was told that the plaintiff had received the message. Miller was ready and willing to buy the stock until December 5, 1917, and the plaintiff testified that he would have sold if he had received the telegram. Later the stock became worthless. The District Court found that there was no gross negligence but the Circuit Court of Appeals distinguished between a failure to take the first step toward transmission and some later neglect, held that the failure was not and, as a matter of public policy, could not be within the protection of the terms that we have stated and held the company liable for $4,500 with interest at seven per cent. from June 18, 1918, on which day the plaintiff made a demand.

The plaintiff, the respondent here, does not deny that he is bound by the terms that we have recited. That was assumed below and is established law. *Western Union Telegraph Co.* v. *Esteve Bros. & Co.*, 256 U. S. 566. Those terms apply as definitely to a nondelivery in consequence of a neglect or oversight at the first office as at any other. The moment that the message is received the contract attaches along with the responsibility, and the transit begins. We can perceive no legal distinction between that moment and the next when the message is handed to a transmitting clerk, or that on which a copy is given to a boy at the further end. The hand that holds the paper technically is that of the Company, but no more at the beginning than at the end, and as in fact it is that of servants, reasonable self-protection is allowed to the

master against their neglects.    One such self-protection sanctioned by the decisions is a valuation of the message, with liberty to the sender to fix a higher value on paying more for it.    *Adams Express Co.* v. *Croninger,* 226 U. S. 491.    The plaintiff finds no difficulty in valuing the message now.    It was at least equally possible to value it when it was sent.    See *Western Union Telegraph Co.* v. *Esteve Bros. & Co.,* 256 U. S. 566, 574; *Postal Telegraph-Cable Co.* v. *Warren-Godwin Lumber Co.,* 251 U. S. 27.

When the message is valued it may be doubted whether the valuation can be affected by the intensity of the vituperative epithet applied to an admitted fault.    *Kirsch* v. *Postal Telegraph Cable Co.,* 100 Kans. 250, 252.    At all events something more would have to be shown than is proved here to take the case out of the general rule.    The act of the receiving clerk cannot reasonably be supposed to have been more than a momentary inadvertence.    It was not a wilful wrong.    The answers to the inquiries were probably the natural consequence of the first error, and the second answer probably was too late to have had any effect upon the plaintiff's position.    See *Primrose* v. *Western Union Telegraph Co.,* 154 U. S. 1, 15.    With regard to the amount of the valuation, if it is too low now, *Unrepeated Message Case,* 61 I. C. C. 541, it was reasonable in 1917.    *Primrose* v. *Western Union Telegraph Co.,* 154 U. S. 1, 15.    *Unrepeated Message Case,* 44 I. C. C. 670.    Whatever effect may be given to the judgment of the Commission in the later case, it was not intended to be retroactive.    The rules prescribed by the Commission were to take effect on July 13, 1921.

We have not adverted to the first clause of the exemptions, limiting liability to the amount received for sending the message.    Obviously this has a narrower scope than the valuation clause and we should hesitate to hold that it exonerated the defendant in this case.    *Unrepeated Message Case,* 61 I. C. C. 541.

Another clause not mentioned as yet reads: "The Company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the telegram is filed with the Company for transmission." This could not be held to apply literally to a case where through the fault of the Company the plaintiff did not know of the message until the sixty days had passed. It might be held to give the measure of a reasonable time for presenting the claim after the fact was known, in the absence of anything more. But here the plaintiff called on Hackett, the General Manager at Boise, about February 14, 1918, as soon as he knew the facts. Directly after, he received a letter from Hackett regretting the occurrence and enclosing the amount paid by the plaintiff as toll. Three days later the plaintiff returned the check by letter saying " an acceptance of this check on my part might be construed as a settlement of the matter," so that the defendant then had written notice that a claim was made. There was further communication and finally on June 18 the plaintiff made a formal written demand. We should be unwilling to decide that the action was barred by this clause. But we are of opinion that his claim is limited to fifty dollars for the reasons given above.

*Judgment reversed.*

MR. JUSTICE McKENNA dissents.