## NOLTE BRASS FOUNDRY CO. v. WESTERN UNION TELEGRAPH CO.
### No. 263.

District Court, S. D. Ohio, W. D.
Feb. 21, 1930.

Cole, Bowman & Hodge, of Springfield, Ohio, and D. W. and A. S. Iddings, of Dayton, Ohio, for plaintiff.

Ireton & Schoenle, of Cincinnati, Ohio, and Francis R. Stark and Ralph H. Overbaugh, both of New York City, for defendant.

NEVIN, District Judge.

By a stipulation in writing, entered into between the parties herein, a jury was waived for the trial of this cause and all the issues were submitted to the court for determination. Counsel for plaintiff requested the court to separately state its findings of fact and conclusions of law upon rendering a final decision, and this is accordingly done.

### Findings of Fact.

The Orton & Steinbrenner Company, of Chicago, Ill., on or about November 30, 1925, in a written communication (Plaintiff's Exhibit A), invited plaintiff herein, along with other companies of like character, to bid on said Orton & Steinbrenner Company's 1926 requirements of brass castings in rough, which were estimated, on five years' past experience, to be 300,000 pounds. In said communication, said Orton & Steinbrenner Company state that they "shall soon be placing our contract for our brass casting requirements throughout the year 1926 and we would like to have a pound price quotation from you FOB, Huntington, Ind." etc. It was the intention of the Orton & Steinbrenner Company to award the contract to the lowest responsible bidder, and plaintiff was so informed. Plaintiff submitted proposed written contracts to the Orton & Steinbrenner Company, exactly similar to copies introduced as evidence in this case and marked Exhibits C and L, except that they contained the prices mentioned in the letter marked Exhibit B. This form of contract was satisfactory to the Orton & Steinbrenner Company, and said company would have signed the contract in said form. The prices which plaintiff company first quoted were high, and the Orton Company so indicated to plaintiff company. Thereupon, plaintiff company decided to revise their quotation which previously had been "a cent and a quarter over cost of mixture" to "½¢ over mixture." Thereupon, on December 21, 1925, plaintiff company sent a telegram from Springfield, Ohio, addressed to P. A. Orton, ℅ Orton & Steinbrenner Company, Chicago, Ill., reading as follows: "Please revise our quotation to ½ cent over mixture." The price revision suggested in plaintiff's telegram would have made it the low bidder and, had the telegram been received, the Orton & Steinbrenner Company would have awarded the contract to plaintiff company. The telegram was not received by the Orton & Steinbrenner Company and said company awarded the contract to a firm in Peoria, Ill. The telegram above referred to was telephoned by Mr. Allen A. Nolte, who was secretary and treasurer and in active charge of the business of the Nolte Brass Foundry Company, from the office of the plaintiff company to the office of the defendant herein, the Western Union Telegraph Company, at Springfield, Ohio, at about 8:30 o'clock a. m., on December 21, 1925. The address of the Orton & Steinbrenner Company, as well as the contents of the telegram, were all telephoned, the message being taken by a young lady clerk in the Springfield office, who died previous to the trial of this case. At that time, Mr. Nolte asked if delivery could be made promptly as it was quite an important matter; stating he wanted to get the wire right off. At the time this telegram was sent, there was no direct wire to Chicago from Springfield for sending messages; all such messages were transmitted to Cincinnati and thence to Chicago. The message in question was transmitted from Springfield at 8:32 o'clock a. m., was received in Cincinnati and transmitted from Cincinnati at 8:47 o'clock a. m., December 21st. There is nothing in the record to show that it ever reached Chicago, or what did become of it after it was transmitted by the operator from Cincinnati. The telegram was "an unrepeated message and paid for as such." It was "received for transmission at the unrepeated-message rate." Had the repeated-message rate been paid and said telegram sent as a repeated message, if the Chicago office had not repeated it to Cincinnati, the Cincinnati office would have pursued the matter and if the Chicago office claimed it had not received the message, the message would have been resent from Cincinnati. The testimony of Mr. W. E. Lukens, traffic manager for over ten years for the Western Union Telegraph Company at Cincinnati, Ohio, in this respect is as follows:

"Q. If this had been a repeated message, what would have been done with this message?

"The Court: In the due course of business?

"Q. In the due course of business. A. If it had been a repeated message and we had already got it from Springfield, we would repeat it back to Springfield. If we sent it to Chicago, we would wait for Chicago to repeat it back. If Chicago did not do it, we would get after Chicago and insist on him repeating it back. If he claimed he did not have it, we would resend the message under the same number and then insist on him repeating it back.

"Q. That was an unrepeated message? A. This was not a repeated message."

Had plaintiff received the contract it would have made a profit in excess of $5,000, at least not less than that amount.

It is conceded by counsel for all parties that under any circumstances, in view of the rulings of the United States Supreme Court, the limit of recovery in the instant case is $5,000, although the petition prays for judgment in the sum of $19,659.40. The petition, however, was filed on February 23, 1927, whereas the decision of the Supreme Court of the United States in the case of Western Union Tel. Co. v. Priester, 276 U. S. 252, 48 S. Ct. 234, 72 L. Ed. 555, which all counsel agree controls in the instant case to the extent above referred to, that is, that the limit of liability at most is $5,000, was not decided until February 20, 1928.

### Conclusions of Law.

Plaintiff claims that it is entitled to recover $5,000, basing its claim upon the proposition that the fact that this message was sent at the unrepeated rate and that it was an unrepeated message, is not material in this case because, as plaintiff claims, the object of repetition is to make sure the verbiage of the message itself and that the instant case falls in the category of those wherein the courts have heretofore stated that:

"The message must, of course, be sent before it can be repeated; it must be sent and repeated before any comparison could be made. Although the regulation purports to be made to guard against mistakes or delays, it should be construed to refer to such mistakes and delays as could be corrected or avoided by repetition and comparison. * * * It is difficult to believe that this stipulation was intended by the parties to be applicable to a case in which the conduct of the company made it impossible for the message to be repeated." Box v. Telegraph Co.

(C. C. A.) 165 F. 138, 141, 28 L. R. A. (N. S.) 566.

Plaintiff further claims that what defendant actually did, under the 1921 order of the Interstate Commerce Commission, was to refile its old rules in language and meaning practically identical with the stipulations which it had in its contract prior thereto, except for the increased amount and that, therefore, that construction must be applied which was in force by judicial opinion when the schedules were filed with the Interstate Commerce Commission, and counsel for plaintiff cite and stress the case of Western Union Tel. Co. v. Czizek, 264 U. S. 281, 44 S. Ct. 328, 68 L. Ed. 682.

The latest expression of the United States Supreme Court bearing generally upon this subject-matter is found in the case of Western Union Telegraph Co. v. Priester, 276 U. S. 252, 48 S. Ct. 234, 72 L. Ed. 555. In this late case, the Supreme Court, at page 259 of 276 U. S., 48 S. Ct. 234, 235, say:

"Since the decision in the Primrose Case the telegraph companies have been brought under the provisions of the Interstate Commerce Act and their tariffs for all interstate service made subject to the approval of the Interstate Commerce Commission. * * * By section 1 of the Interstate Commerce Act it is provided that subject to the approval of the Commission messages received by telegraph companies for transmission may be classified into 'repeated, unrepeated * * * and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages.' The established rates for unrepeated messages thus became the lawful rates and the attendant limitation of liability became the lawful condition upon which messages might be sent. (Citing cases.) What had previously been a matter of common-law liability, with such contractual restrictions as the states might permit, then became the subject of federal legislation to secure reasonable, and just rates for all without undue preference or advantage to any. Since that end is attainable only by adherence to the approved rate, based upon an authorized classification, that rate 'represents the whole duty and the whole liability of the company.' "

The order of the Interstate Commerce Commission, dated May 3, 1921 (Exhibit No. 1) reads in part as follows:

"It is further ordered that said respondents be and are thereby notified and required * * * to maintain and apply rules and provisions which shall limit said respondents'

liability for errors or delays in the transmission or delivery or for non-delivery of interstate messages by telegraph to amounts not less than $500.00 for each such message received for transmission at the unrepeated message rate, or less than $5,000.00 for each such message received for transmission at the repeated message rate."

It is the contention of the defendant that the liability being a part of the rate, it follows that the liability of $500 for a message received at the unrepeated rate is fixed by law.

This court is of the opinion that this contention upon the part of the defendant is correct, and this court holds as a conclusion of law that under the facts of the instant case the liability of defendant in this case, as a matter of law, is fixed at an amount not to exceed the sum of $500.

### Result of Findings and Conclusions.

As a result of the findings of fact and conclusions of law arrived at by the court, this court is of the opinion, and so holds, that the plaintiff in this case is entitled to recover from the defendant in this case the sum of $500, together with its costs herein expended, and an order may be drawn based upon the findings of fact and conclusions of law, as set forth herein, awarding judgment to plaintiff herein for said sum of $500, and its costs.