ABBOTT SUPPLY COMPANY, a corporation of the State of Delaware, v. THE WESTERN UNION TELEGRAPH COMPANY, a corporation of the State of New York.

*(October 12, 1948.)*

LAYTON, J., sitting.

*James M. Tunnell, Jr.,* for the Plaintiff.

*Caleb M. Wright* for the Defendant.

Superior Court for Sussex County, No. 32, June Term, 1947.

LAYTON, J.:

This action was instituted to recover damages alleged to have been caused by the negligence of the Defendant in failing to deliver a telegram sent at the unrepeated rate by

Plaintiff from Georgetown, Delaware, on March 31, 1947 to Vitality Mills, Inc. at Chicago. It read: "Cancel all feed shipments." The reason for the temporary cancellation of further shipments (which, under its contract with Vitality Defendant had a right to do) was because Plaintiff then had a reasonably full inventory of feed on hand and expected a sharp drop in the price of feed which, in fact, thereafter materialized. As the result of Defendant's admitted failure to deliver the telegram, Vitality Mills, Inc. shipped three carloads of feed to Plaintiff for which it was bound to pay. When it next needed feed, the price had fallen sharply. Language on the back of the telegraph form contained provisions purporting to limit the liability of the Defendant for errors or delays in transmission, or non-delivery to $500, $5000, or any sum in which the message is valued, in accordance with certain specified rates. If the first section of the limitation of liability applies, as Defendant contends, then Plaintiff's recovery is limited to $500; if, however, the second section governs, as Plaintiff contends, then it could recover its full damages or $1023.75. The language in question is as follows:

"The Company shall not be liable for mistakes or delays in the transmission or delivery, or for the non-delivery, of any message received for transmission at the unrepeated-message rate beyond the sum of five hundred dollars; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the repeated message rate beyond the sum of five thousand dollars, unless specially valued; nor in any case for delays arising from unavoidable interruption in the working of its lines.

"In any event the Company shall not be liable for damages or mistakes or delays in the transmission or delivery, or for the non-delivery, of any message, whether caused by

the negligence of its servants or otherwise, beyond the actual loss, not exceeding in any event the sum of five thousand dollars, at which amount the sender of each message represents that the message is valued, unless a greater value is stated in writing by the sender thereof at the time the message is tendered for transmission, and unless the repeated-message rate is paid or agreed to be paid, and an additional charge equal to one-tenth of one per cent of the amount by which such valuation shall exceed five thousand dollars."

This language has remained substantially in the same form for many years except for a gradual increase in the amounts limiting the liability of the company in the various classes of messages.

Defendant contends that the several provisions limiting its liability to stated amounts predicated upon the rate charged are entirely clear in their meaning. It argues that, as to the sender of an unrepeated message, the liability of the company is limited to $500 regardless of the kind of error committed or degree of negligence giving rise to the error. Similarly, that as to the sender of a repeat message, the limit of liability is $5000; and that if the sender desires fuller protection it may be increased by sending his message at the valued rate. Defendant points to the language of Clause 1 limiting its liability in the case of an unrepeated message to $500 "* * * for mistakes or delays in the transmission or delivery, or for non-delivery * * *" as squarely embracing the facts of this case. It cites *Nolte Brass Foundry Co. v. Western Union Tel. Co.*, D.C.Ohio, 38 *F*.2d 838, 839, as supporting its argument.

Plaintiff, however, has advanced a most ingenious argument pointing to the conclusion that, in cases of delays or non-delivery, as distinguished from errors in transmission, the $500 limitation of liability clause does not apply at all; rather that the pertinent provision is as follows:

"In any event the Company shall not be liable for damages, for mistakes or delays in the transmission or delivery, or for the non-delivery, of any message, whether caused by the negligence of its servants or otherwise, beyond the actual loss, not exceeding in any event the sum of five thousand dollars, at which amount the sender of each message represents that the message is valued, * * *."[1]

The Second Unrepeated Telegraph Message Case, 61 *Int.Com.Com.Reports* 541 and *Western Union Tel. Co. v. Czizek*, 264 *U.S.* 281, 44 *S. Ct.* 328, 68 *L. Ed.* 682, are cited as supporting Plaintiff's theory of the case.

By way of general introduction to the subject, it should be observed that prior to 1910, the law with respect to the recovery of damages resulting from inaccurate transmission, or non-delivery, of telegraph messages was in decided confusion. In part, this was due to decisions of the Courts of certain States forbidding exculpation and, in part, to the tendency of other Courts to measure the resulting liability by the degree of negligence occasioning the error in transmission or failure to deliver as the case may have been. Since the 1910 amendment to the Interstate Commerce Act, 49 U.S.C.A. § 1, the Courts have uniformly ruled that the rate at which the telegram is sent governs the liability of the company in interstate messages.

"The act of 1910 introduced a new principle into the legal relations of the telegraph companies with their patrons which dominated and modified the principles previously governing them. Before the act the companies had a common law liability from which they might or might not extricate themselves according to views of policy prevailing in the several states. Thereafter, for all messages sent in interstate or foreign commerce, the outstanding consideration

---

[1] Hereafter the paragraph will be referred to as the valuation clause.

became that of uniformity and equality of rates. Uniformity demanded that the rate represent the whole duty and the whole liability of the company. It could not be varied by agreement; still less could it be varied by lack of agreement. The rate became, not as before a matter of contract by which a legal liability could be modified, but a matter of law by which a uniform liability was imposed." Brandeis, J., for the Court in *Western Union Tel. Co. v. Esteve Bros.*, (1921) 256 *U.S.* 566, 571, 572, 41 *S. Ct.* 584, 586, 65 L. Ed. 1094.

The only remaining uncertainty arises, as here, in the application of the proper section of the tariff to the facts of the particular case.

Despite the language of the first section of the tariff limiting liability to $500 for mistakes or delays in transmission, or non-delivery, I am forced to the conclusion that the valuation clause governs here. In the Second Unrepeated Telegraph Message Case,[1] the Commission had the following to say in explanation of the various rates contained in Defendant's tariff:

"As a condition attaching to the transmission of a message at the lowest, or unrepeated, rate it is stipulated that the company shall not be liable for mistakes, delays, or non-delivery beyond the amount received for sending it (now $500) ; * * * But to protect the sender against possible loss in the event of errors in transmission, the respondents offer the second, or repeated, class of messages at a rate one and one-half times the rate for the same message if unrepeated. For this additional rate they agree to assume liability to the extent of 50 times the rate paid, (now $5000),

---

[1] This was a proceeding initiated by the Commission upon numerous complaints of the public that Defendant was (1) unfairly compromising claims in amounts far exceeding its regulations and (2) that the amounts to which Defendant then limited its liability were inadequate.

with a maximum liability in the case of the Western Union of $50 (now also $5000). The third class of messages, for the transmission of which the rate charged is the repeated rate plus a surcharge of one-tenth per cent of the valuation, is designed to insure the sender against any loss within the value placed upon the message. *To afford protection against extravagant claims for damages on account of errors or delays which a repetition of the message would not have prevented, provision is made by the Western Union for a limitation of liability to $50 (now $5000)*[1] * * * *which, unless a greater value is declared, is the agreed value of the message.* * * *"*

·"A repeated telegram differs from the ordinary telegram in that it is repeated back at each stage of transmission from point of origin to transmission. This class of message is seldom used, an operator testifying that in seventeen or eighteen years of experience, he had transmitted perhaps two hundred such messages. *Repetition of a message is a certain guard against errors in transmission, but is no protection against delayed delivery.*"

Now if anyone knows the meaning of Defendant's various tariff limitations it is the Interstate Commerce Commission. The language emphasized clearly states that the $500 limitation attached to the unrepeated rate applies only to cases involving errors or mistakes in transmission; that the purpose of the valuation clause is to exempt cases of delay or non-delivery due to negligence from the operation of Sec. I. In no event, of course, can the sender recover more than his actual loss. This conclusion is further sustained by *Western Union Telegraph Co. v. Czizek*, 264 *U.S.* 281, 44 *S.Ct.* 328, 68 *L.Ed.* 682, where an operator at the station at which the telegram was initiated failed to send the message

---

[1] My emphasis.

at all, resulting in non-delivery. There Justice Holmes, speaking for the Supreme Court, said:

"We have not adverted to the first clause of the exemptions, limiting liability to the amount received for sending the message (now $500). Obviously this has a narrower scope than the valuation clause and we should hesitate to hold that it exonerated the defendant in this case. Unrepeated Message Case, 61 Interstate Com. Com'n R. 541."

In that case the terms and conditions attached to the tariff were identical and, yet, Justice Holmes refused to apply Sec. I limiting the liability to what is now $500, but established liability under the second paragraph, or valuation clause, then $50, now $5000.

■ The only factual difference between the Czizek case and this is that, there, the error was at the point of the initiation of the message while, here, it occurred at the next relay station. Defendant argues, therefore, that Plaintiff is estopped from recovery because, had it sent a repeated message, the error would have been promptly discovered and rectified. There is authority for this proposition, *Kiley v. Western Union Tel. Co.*, 109 *N.Y.* 231, 16 *N.E.* 75. However, the Interstate Commerce Commission has stated that "Repetition of a telegram is a certain guard against errors in transmission, but is no protection against delayed delivery." If the purpose of the repeated message is to protect against "errors in transmission," but not against "delayed delivery," of telegrams, I am unable to understand how Plaintiff's omission to adopt the repeated rate can operate as an estoppel. Further, Justice Holmes in the Czizek case expressly ruled out such a defense by stating, "Those terms apply as definitely to a nondelivery in consequence of a neglect or oversight at the first office as at any other." The contention that Plaintiff is limited to the recovery of $500 upon the principle of estoppel is not acceptable.

*Western Union Tel. Co. v. Priester*, 276 *U.S.* 252, 48 *S.Ct.* 234, 236, 72 *L.Ed.* 555, is not inconsistent. There damage resulted from an inaccurate transmission of a telegram in which the word "fifty" was changed to "fifteen." Justice Stone said:

"The message here was unrepeated and the loss resulted from a mistake in transmission. The case thus comes within the express provision of clause 1 of the tariff, limiting the liability to the amount received for the service." (Now $500.)

The distinction between errors in transmission as opposed to delays or non-delivery resulting from negligence, is, thus, clearly preserved.

Concede, arguendo, as Defendant contends, that the language of Clause I of the tariff, limiting liability to $500 for "mistakes or delays in the transmission or delivery, or for non-delivery, of any unrepeated message * * *", on its face covers the facts of this case. Then what does the valuation clause mean? Defendant argues that the clause was originally intended as a safeguard against extravagant claims in cases originating in those States which once refused to recognize the exculpatory language in Sec. I and that, while no longer necessary in view of the Priester decision, the clause was never deleted from the tariff. This answer is ingenious but in view of the complete lack of authority to support it, I remain unconvinced. The language of the Second Unrepeated Case, elsewhere quoted, is in direct conflict with Defendant's explanation. Furthermore, it was the Esteve case [256 U.S. 566, 41 S.Ct. 586], decided in 1921, not the Priester case, in 1927, which settled the proposition that the "* * * rate represent the whole duty and the whole liability of the company." I have studied and restudied the language of the valuation clause. Read alone, or in conjunction with the entire tariff, it remains

meaningless. Read in conjunction with the Second Unre-peated Message Case and the Czizek cases, its meaning, and at the same time, its purpose, is revealed—to exempt cases of delayed transmission from the operation of Sec. I of the tariff. The weight of authority points to that result and for the reasons here given I must decline to accept the case of Nolte Brass Foundry Co. v. Western Union Tel. Co., (D.C.) 38 F. 2d 838, 839 as authoritative. If Defendant de-sires the result for which it is here contending, let it re-phrase the terms and conditions of its tariff in language ad-mitting of no doubt.

I decide this, therefore, and only this, that where a telegram is delayed in delivery, or is not delivered, due to negligence in handling, the limit of Defendant's liability is $5000, but in no event greater than the loss thereby suf-fered. The question whether the valuation clause would be applicable in the case of a message delayed because of an error in transmission resulting in the wrong name or address of the addressee poses an interesting point which is not presented for decision here. The first ground alleged for a new trial is denied.

Upon consideration I find no reversible error in my charge pertaining to damages.

The motion for a new trial is denied.