WESTERN UNION TELEGRAPH COMPANY, a corporation of the State of New York, Defendant Below, Plaintiff-in-Error, v. ABBOTT SUPPLY COMPANY, a corporation of the State of Delaware, Plaintiff Below, Defendant-in-Error.

(*May* 26, 1950.)

HARRINGTON, Chancellor, RICHARDS, C. J., TERRY, CAREY. J. J., SEITZ, Vice-Chancellor, sitting.

*Clarence A. Southerland, James L. Latchum* (of Southerland, Berl and Potter), *Caleb M. Wright, John H. Waters* (of New York City) for the defendant below, plaintiff-in-error.

*James M. Tunnell, Jr.,* (of Tunnell and Tunnell) for plaintiff below, defendant-in-error. ·

SEITZ, Vice Chancellor, delivering the opinion of the court:

This case requires the Court to determine under which clause of the telegraph company's tariff its liability is here fixed. The parties will be designated as they appeared in the trial court.

Plaintiff brought suit to recover damages occasioned by the defendant's delay in sending a telegram. The message was delivered to the defendant's agent in Georgetown, Delaware, who relayed it to Dover, Delaware. The Dover office failed to transmit it promptly to Chicago because of a clerical error in making up the office record of telegrams sent. This telegram was marked "sent" when in fact it had not been sent. Actual delivery of the telegram was made about two weeks later.

The telegram was paid for at the so-called unrepeated-message rate. It was an interstate message and was governed by the defendant's tariff on file with the Federal Communications Commission which was approved by the Interstate Commerce Commission by its order of May 3, 1921.

Plaintiff contended at the trial, and the trial court agreed, that the defendant's liability in this case was governed by paragraph 2 of the tariff which imposes a $5,000 limit. See 5 *Terry 477,*

61 *A. 2d* 660. Defendant contended below and still contends that paragraph 1 of the tariff providing for a $500 limit was controlling. The jury returned a verdict for plaintiff in the sum of $1,023.75 and defendant appealed.

The tariff paragraphs in issue, which also appear on the back of the telegram, provide as follows:

"To guard against mistakes or delays, the sender of a message should order it repeated, that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated message rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated message and paid for as such, in consideration whereof it is agreed between the sender of the message and this Company as follows:

"1. The Company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the unrepeated message rate beyond the sum of five hundred dollars; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at 1he repeated-message rate beyond the sum of five thousand dollars, unless specially valued; nor in any case for delays arising from unavoidable interruption in the working of its lines.

"2. In any event the Company shall not be liable for damages for mistakes or delays in the transmission or delivery, or for the non-delivery, of any message, whether caused by the negligence of its servants or otherwise, beyond the actual loss, not exceeding in any event the sum of five thousand dollars, at which amount the sender of each message represents that the message is valued, unless a greater value is stated in writing by the sender thereof at the time the message is tendered for transmission, and unless the repeated-message rate is paid or agreed to be paid, and an ad-

ditional charge equal to one-tenth of one per cent of the amount by which such valuation shall exceed five thousand dollars."

Plaintiff's theory "is that an ordinary unrepeated message has a valuation of Five Thousand Dollars ($5,000), but if there is a delay or failure of transmission, or if an error appears in the language of the telegram, any of which are caused by some slip or mistake *which a repetion of the message would have avoided* had the sender ordered it repeated and paid the higher rate, then the sender's recovery for such error, delay or nondelivery is limited to the sum of Five Hundred Dollars ($500). But if the sender desires to have a right to recover up to Five Thousand Dollars ($5,000) for any type of error, delay, or nondelivery, however caused, he may do so by paying the repeated rate." The trial court adopted this theory.

It appears that the defendant's negligence here was not of the type which would probably have been prevented by repetition. Plaintiff appears to tacitly concede that paragraph 1, read literally, covers this action. But, says plaintiff, paragraph 1 should be construed to refer only to such mistakes and delays as could be corrected or avoided by repetition. Plaintiff contends that its construction of paragraph 1 of the tariff is justified by the introductory should order it repeated to guard against mistakes or delays. It also language of the tariff which states that the sender of a message relies on the comprehensive language of paragraph 2 as well as certain court decisions.

It must be conceded that there could be many acts of negligence in the handling of telegrams by the defendant which, as in this case, would probably not be discovered by repetition. It does not necessarily follow that these situations are to be treated differently, liability-wise, from those where repetition would probably prevent the error. This is so because of the statutory philosophy involved in the filing of the tariffs with the I. C. C. and also

because of certain decisions of the United States Supreme Court construing such tariffs.

Under plaintiff's theory, the amount of protection afforded senders paying the same charge will vary depending upon the type of defendant's negligence. We do not believe such a result is justified under the Act to Regulate Commerce, as amended in 1910, 49 U. S. C. A. § 1 et seq. The amended Act authorized the classification of messages "into day, night, repeated, unrepeated, letter, commercial, press, Government, and such other classes as are just and reasonable". It then authorized the charging of different rates "for the different classes of messages". 49 U. S C. A. § 1 (5).

In *Western Union Tel. Co.* v. *Esteve Bros. & Co.,* 256 *U. S.* 566, 41 *S. Ct.* 584, 586, 5 *L. Ed.* 1094, the United States Supreme Court was called upon to consider the effect of the amended Act. The Court set out the portions of the Act heretofore quoted and stated that where, as here, a company files its tariffs under the Act, the rate is "thereafter the only lawful rate for an unrepeated message, and the limitation of liability [becomes] the lawful condition upon which it [can be] sent." The Court went on to point out that "If the general public upon paying the rate for an unrepeated message accepted substantially the risk of error involved in transmitting the message, the company could not, without granting an undue preference or advantage extend different treatment to the plaintiff here. The limitation of liability was an inherent part of the rate."

"The act of 1910 introduced a new principle into the legal relations of the telegraph companies with their patrons which dominated and modified the principles previously governing them. * * * The rate became, not as before a matter of contract by which a legal liability could be modified, but a matter of law by which a uniform liability was imposed." See *Artic Roofings* v. *Travers,* 3 *Terry* (42 *Del.*) *293, A. 2d 559.*

■ ■ It may be noted that the Act of Congress and the language of the Court in the Esteve case construing it demonstrate that the liability in each classification is part of the rate. The Act of Congress explicitly authorizes, inter alia, the unrepeated-message classification and then provides that *different* rates may be charged for the *different* classes of messages. It does not authorize more than one rate for any one classification. And vitally important, it does not explicitly recognize or authorize different measures of liability within a classification.[1] Uniformity of liability was geared to uniformity of rate. The emphasis is on uniformity of rates within classifications. This same emphasis is strongly recognized in *Western Union Tel. Co.* v. *Priester,* 276 *U. S.* 252, 48 *S. Ct.* 234, 72 *L. Ed.* 555.

Plaintiff relies principally on the Supreme Court opinion of Justice Holmes in *Western Union Tel. Co.* v. *Czizek,* 264 *U. S.* 281, 44 *S. Ct.* 328, 329, 68 *L. Ed.* 682. It does appear that the Court in that case, which, in time, followed the Esteve case but preceded the Priester case, considered the then paragraph 1 not to be applicable in a situation similar to the case here presented. The Court said: "We have not adverted to the first clause of the exemptions, limiting liability to the amount received for sending the message. Obviously this has a narrower scope than the valuation clause and we should hesitate to hold that it exonerated the defendant in this case. *Unrepeated Message Case,* 61 *Interst. Com. Com'n R.* 541."

We have read the so-called Second Unrepeated Message Case, 61 Interst. Com. Com'n R. 541, relied on by Justice Holmes. In the Second Unrepeated Message Case the Commission described the rules as follows: "* * * they offer the sender his choice of three classes of messages, unrepeated, repeated, and valued, with

---

1. Of course, the liability may be increased by paying an additional *amount under the valuation clause.*

different rates for each class, dependent upon the service to be performed and the liability to be assumed. As a condition attaching to the transmission of a message at the lowest, or unrepeated, rate it is stipulated that the company shall not be liable for mistakes, delays, or nondelivery beyond the amount received for sending it; * * *"

The Commission did mention the distinction relied on by plaintiff here, but in the following context: "To afford protection against extravagant claims for damages on account of errors or delays which a repetition of the message would not have prevented, provision is made by the Western Union for a limitation of liability of $50, in practice applied both to unrepeated and repeated messages, and by the Postal company, in the case of repeated messages, to 50 times the repeated rate, which, unless a greater value is declared, is the agreed value of the messages. *This provision on the part of the Western Union is alleged to be necessary in jurisdictions where the unrepeated stipulation is held not to avail*" (emphasis supplied).

In reviewing the evidence concerning Western Union Telegraph Company's activities, the Commission went on to say: "So far as the record shows there has been no substantial change in the Western Union's rule disclaiming responsibility for negligence in the transmission or delivery of unrepeated messages since it was first established, over 50 years ago, notwithstanding that the efficiency of the sending and receiving instruments has been greatly increased and that new appliances have been adopted which reduce the possibility of error to a minimum." In other words Western Union disclaimed responsibility for negligence in connection with unrepeated messages by only returning the toll. This was later increased by order of the Commission. The Commission's opinion clearly does not support the conclusion that the first clause is here inapplicable.

Of extreme importance is the order entered by the Commission on its opinion in the Second Unrepeated Message Case. It provided, inter alia: "That said respondents be, and they are hereby, notified and required to establish, on or before July 15, 1921, and thereafter to maintain and apply, rules and provisions which *shall limit said respondents' liability* for errors, or delays in the transmission or delivery, or for non-delivery, of interstate messages by telegraph *to amounts not less than* $500 *for each such message received for transmission at the unrepeated-message rate,* * * *" (emphasis supplied). The quoted language negatives the right to create different limits of liability within the unrepeated message classification. This order, however, was not applicable to the Czizek case which arose before the entry of the order but it reflects the philosophy of one measure of liability within a classification.

■ In connection with the Commission's order it is pertinent to consider a significant change made in the language of the defendant's tariff governing unrepeated messages. The tariff which the Commission considered and which was before the Court in the Czizek case provided:

"The Company should not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any unrepeated telegram, beyond the amount received for sending the same * * *"

The tariff applicable to the present case provides:

"The Company should not be liable for mistakes or delays in the transmission or delivery, or non - delivery, of any message received for transmission at the unrepeated message rate beyond the sum of five hundred dollars; * * *".

The change in the language from the words "unrepeated message" to "message received for transmission at the unrepeated-

message rate" emphasizes the fact that the liability was to depend solely upon the rate paid. The change of language is significant also because the later language is taken verbatim from the Commission's order—and is the language here controlling.

In view of the recited provisions of the Commission's opinion and order, why did Justice Holmes cite the Second Unrepeated Message Case? Having read the briefs filed in the Supreme Court in the Czizek case, we believe the explanation is found principally in the nature of the contentions advanced in the Czizek case.

Czizek contended that the limitations of liability contained in the then existing tariff, if deemed applicable to his case, were unreasonable. In aid of his argument he relied upon the Second Unrepeated Message Case which had concluded that Western Union's limitations of liability—including the then amount of the valuation clause—were unreasonably low. They did not however make their decision retroactive. Justice Holmes in his opinion, in citing the Second Unrepeated Message Case, must have been citing it in connection with the argument concerning the reasonableness of the rate. To suggest that Justice Holmes cited it for the proposition that there could be different limits of liability within a classification would fly directly into the face of the language of the Commission's opinion and order.

The Holmes' statement that "we should hesitate to hold that it [the first clause] exonerated the defendant in this case" may be explained by the fact that Czizek's real objective in the case was to have the Court determine that *neither* clause was applicable. Western Union emphasized there that in any event the valuation clause applied. Western Union's emphasis on the valuation clause in the Czizek case is understandable in the light of Czizek's contention that not even the valuation clause (then $50) applied and when we remember the first clause then only provided for the return of the service charge.

The tariff here involved provides for limitations of liability which were determined by the Commission to be reasonable after it conducted hearings thereon. These limitations imposed upon the Company substantially greater liability than did those before the Supreme Court in the Czizek case.

In view of the language of the opinion and order in the Second Unrepeated Message Case and the changes since made in the wording of paragraph 1, and because we do not believe the present issue was resolved in the Czizek case, we conclude that the decision in the Czizek case does not require this Court to conclude that the provisions of the first clause are here inapplicable. It may also be noted that the distinction relied upon by the present plaintiff was not even mentioned in the opinion or briefs filed in the Czizek case.

In the Priester case the Supreme Court explicitly stated that different degrees of negligence were not important because "* * * we may not disregard a lawful exercise of the regulatory power which has made no distinction between degrees of negligence, nor may we, upon any theory of public policy, annex to the rate as made conditions affecting its uniformity and equality." [276 U. S. 252, 48 S. Ct. 236.] *See Western Union Tel. Co. v. Esteve Bros. & Co., supra.* What statutory basis is there for declining to recognize degrees of negligence and yet recognizing different kinds of negligence in the same classification? None, we submit.

It is true that in the Esteve and Priester cases repetition would probably have revealed the error in transmission, while it would probably not have done so in the Czizek case. But the distinction between types of negligence under the unrepeated-message classification has not even been adverted to in any of the Supreme Court cases.

In *Western Union Tel. Co. v. Esteve Bros. & Co., supra,* the Court said: "The repeated rate, offering greater accuracy

and greater liability in case of error, was open to anyone who wished to pay the extra amount for extra security." [256 U. S. 566, 41 S. Ct. 587.] This language indicates that the Court considered the repeated message as offering "greater liability in case of error." Under plaintiff's theory here, such would not always be true because it contends that in this case the defendant's liability for negligence in connection with an unrepeated message is the same as for a repeated message not specially valued.

Plaintiff's theory is supported by *Box v. Postal Telegraph-Cable Co.*, (*5 Cir.*) 165 *F.* 138, 28 *L. R. A.* (*N. S.*) 566. That case was decided prior to the 1910 amendment to the Act to Regulate Commerce and it does not reflect the philosophy of that amendment which places the emphasis on uniformity and equality of rates and liability within classifications. The Box case was not cited in the briefs filed with the Supreme Court in the Czizek case. This is of course understandable because Czizek contended that neither clause applied. We deem the Box decision to be no longer applicable.

Paragraph 2 of the tariff was held by the lower court to apply because it was felt that it would be meaningless otherwise—at least the first part thereof. We believe an examination of the history of this company as contained in the cases deciding the meaning of the language here involved warrants the conclusion that this language is not meaningless. It certainly covers the intrastate transactions where state courts refuse to apply the limitation of liability provided for in paragraph 1 but recognize valuation clauses. In other words, some courts distinguish between provisions limiting liability and valuation clauses —striking down the former and upholding the latter. Compare *D'Utassy v. Barrett*, 219 *N. Y.* 420, 114 *N. E.* 786, 5 *A. L. R.* 979. Prior to the Priester case, it was held by some courts that even as to interstate messages, paragraph 1 would not be applied to cases involving gross negligence. See *Frederick v. Western Union Tel.*

*Co.,* 189 *Iowa* 1338, 179 *N. W.* 934; *Western Union Tel. Co.* v *Hankins,* 104 *Okl.* 111, 230 *P.* 857. However, many courts have reached the conclusion that paragraph 1 is applicable to unrepeated interstate messages, e. g. *Nolte Brass Foundry Co. v. Western Union Tel. Co., D. C.,* 38 F. 2d 839; *Western Union Tel. Co.* v. *Bashinsky, Case & Co.,* 217 *Ala.* 661, 117 *So.* 289.

It might be asked why the first portion of paragraph 2 appears in the tariff if, as defendant contends, it now only applies to intrastate messages—which are beyond the Commission's jurisdiction. When the present tariff was filed, the validity and applicability of paragraph 1, even as to interstate messages, had not been determined by the United States Supreme Court. Indeed, a Supreme Court case decided before the adoption of the Interstate Commerce Act had intimated that the damage limitation of paragraph 1 might not apply to cases of gross negligence. See *Primrose* v. *Western Union Tel. Co.,* 154 *U. S.* 1, 14 *S. Ct.* 1098, 38 *L. Ed.* 883. The Supreme Court's decision in the Priester case disposing of this issue by foreclosing any recognition of degrees of negligence came several years after the defendant filed its present tariff—although the case arose under the old tariff. Thus, there was then reason for inserting the first part of paragraph 2. Whatever reasons the defendant had after the Priester decision for not deleting from its tariff the language here considered—defendant suggests some so-called practical reasons—we feel, for the reasons stated, that paragraph 1 applies. The underlying philosophy which determines the application of paragraph 1 to interstate transactions involves considerations which are not necessarily binding in cases involving intrastate messages.

We believe that paragraph 1 governs unrepeated interstate messages and fixes the limit of liability therefor. The judgment below must be set aside and the case remanded to the Superior Court with a direction to enter judgment for the plaintiff in the sum of $500.