## SHOWS v. WESTERN UNION TEL. CO.

### Civ. No. 3333.

United States District Court,
W. D. Louisiana, Alexandria Division.
July 2, 1952.

James N. Lee, Bunkie, La., J. Harry Henderson, Jr., H. W. Hill, Alexandria, La., for plaintiff.

White, Holloman & White, T. W. Holloman, Alexandria, La., for defendant.

DAWKINS, Chief Judge.

This suit was filed originally in the State Court and removed here by the defendant on the ground of diversity of citizenship.

Plaintiff claims damages for garbling a telegraphic money order, the proceeds of

which, as a consequence, was never delivered to the intended payee. Defendant has pleaded certain special defenses based upon provisions in the forms used for transmitting the money, the purpose of which was to pay renewal rentals under a mineral lease. These special defenses have been submitted for disposition preliminarily, before going into any question of damages on the merits for the reason that, if sustained, they would largely dispose of the case.

The facts involved here have been stipulated in connection with exhibits attached thereto, and are found in the footnotes to this opinion.[1] The special defenses are:

1. "1. At 4:15 P.M., March 4, 1949, plaintiff purchased from defendant at Bunkie, Louisiana, a Western Union telegraphic money order for $87.33, to be wired to the Bank of Franklin, Meadville, Mississippi. Said money order was written on defendant's standard money order form and plaintiff paid the charges fixed therefor.

"2. At the same time plaintiff wrote a message on the same form to the said Bank of Franklin reading as follows:

'Lease Rentals to Robert R. Butler, Forty Six Dollars, and Thirty Three Cents. and Prior Neal, Thirty Nine Dollars, for lease rentals.'
Plaintiff paid the charges fixed therefor.

"3. Said money order and message were sent through the regular channels. On March 5, 1949, the said Bank of Franklin received said money order and the accompanying telegram as follows:

'MR. CK PD Bunkie La.
415PM 4 Mar 1949
'Bank of Franklin
Meadville, Miss.
Eighty Seven and 33 Cents (87.33) CAU Bank of Franklin Meadville, Miss. from George A. Shows Lease Rental to Robert R. Ballis Forty Six Dollars and Thirty Three Cents and Prior Neal Thirty Nine Dollars for Lease Rental
"Mod Natchez, Miss.
926AM'

"4. The said Bank of Franklin, thereupon, wrote a check dated March 5, 1949, to the order of Robert R. Ballis for $46.33, and mailed it and it was returned undelivered and held by the bank. The bank had no account in the name of Robert R. Ballis. The records of the bank showed that in prior years plaintiff had remitted for leases to Robert R. Butler and Irene Butler. Plaintiff also paid said bank in due time the lease rental due Robert R. Butler on March 6, 1950, covering the same land, and said bank received same without objection or comment.

"5. Said money order and said message were sent by plaintiff on standard forms identical with those attached to and made part of defendant's answer, the money order being marked 'Exhibit C' and as to the message 'Exhibit A'.

"6. * * * 'All Messages Included in Money Orders are Subject to the Following Terms:

" 'To guard against mistakes or delays, the sender of the message should order it repeated, that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated message rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated message and paid for as such, in consideration whereof it is agreed between the sender of the message and the Telegraph Company as follows:

" '1. The Telegraph Company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the unrepeated-message rate beyond the sum of five hundred dollars; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the repeated-message rate beyond the sum of five thousand dollars, unless specially valued; nor in any case for delays arising from unavoidable interruption in the working of its lines.

*   *   *   *   *

" '6. The Telegraph Company will not be liable for damages or statutory penalties when the claim is not presented in writing to the Telegraph Company, (a) within sixty days after the message is filed with the Telegraph Company for transmission in the case of a message between points within the United States, (except in the case of an intrastate message in Texas) or between a point in the United States on the one hand and a point in Alaska, Canada, Mexico, and St. Pierre & Miquelon Islands on the other hand, or between a point in the United States and a ship at sea or in the air, (b) within 95 days after the cause of action, if any, shall have accrued in the case of an intrastate message in Texas, and (c) within 180 days after the message is filed with the Telegraph Company for transmission in the case of a message between a point in the United States and a foreign or overseas point other

(1) that the forms used and accepted by the plaintiff in sending the funds and message provided that the defendant should not be liable unless the claim for damages was presented in writing not less than sixty days after the message was filed; and (2) limiting the liability of the defendant to a refund of the charges paid for the transmission and a maximum recovery of $500, if the sender failed to require, for a small additional fee, the repeating back to the sending office of the message to avoid such mistakes as was made here.

As shown by the stipulated facts, the telegraphic money order in the sum of $87.33, to cover the annual rental under the mineral lease, and accompanying message were filed and sent on March 4, 1949, about 4:30 p. m., but the name of one of the payees in the money order was badly garbled. As delivered by defendant and received by the Bank of Franklin, at Meadville, Mississippi, the name of the lessor or payee was stated as "Robert R. Ballis" instead of Robert R. Butler. The Bank promptly mailed a check to Ballis for the

than the points specified in this paragraph; provided, however, that this condition shall not apply to claims for damages or overcharges within the purview of Section 415 of the Communications Act of 1934 [47 U.S.C.A. § 415].

*    *    *    *    *

" '8. No employee of the Telegraph Company is authorized to vary the foregoing.'

"Said message was an interstate message between Louisiana and Mississippi. Defendant's standard form of message contract, included in a money order, as set forth in the copy attached and in 'Exhibit A', was on file with the Federal Communications Commission as a part of its tariff prior to and was in effect on March 4, 1949.

"Plaintiff's message was an unrepeated message and was paid for as such. Plaintiff was the sender of the message and did not present to defendant any claim in writing within sixty days after the message was filed with defendant for transmission.

"Defendant has pleaded this failure of plaintiff to present any claim in writing within such sixty day period as a separate and complete defense.

"7. Among the conditions pursuant to which said money order was delivered to and received by defendant for transmission was, as shown by said 'Exhibit C', the following:

" 'Money Orders are Subject to the Following Conditions:

*    *    *    *    *

" 'In any event, this Telegraph Company shall not be liable for damages for delay, non-payment, or underpayment of this Money Order, whether by reason of negligence on the part of its agents or servants or otherwise, beyond the amount of underpayment, if any, and other actual loss, the liability for which other actual loss in any event shall not exceed the sum of five hundred dollars, at which amount the sender represents that the

right to have this Money Order promptly and correctly transmitted and promptly and fully paid is valued, unless a greater value is stated in writing on the face of this application and an additional sum paid or agreed to be paid based on such value equal to one-tenth of one per cent. thereof. * * *'

"Said money order was an interstate money order between Louisiana and Mississippi. Defendant's standard form of money order contract as set forth in the copy attached and in 'Exhibit C' was on file with the Federal Communications Commission as a part of its tariff prior to and was in effect on March 4, 1949.

"Defendant has pleaded this limitation on recovery in any event, of five hundred dollars, as a separate and partial defense.

*    *    *    *    *

"9. On March 8, 1949, defendant sent the Bank of Franklin, Meadville, Mississippi, its draft, reimbursing the money it had sent by telegraph and the bank received same March 10, 1949.

"10. A certified copy of the 10 year oil, gas and mineral lease on certain lands in Franklin County, Mississippi, executed by Robert R. Butler and Irene Butler, his wife, in favor of plaintiff, on March 6, 1945, to which reference is made in paragraph 3 of plaintiff's petition, is attached and made a part of this stipulation.

"11. Subject to defendant's objection that it is immaterial and irrelevant because of the failure of plaintiff to give the sixty day written notice and the other prescriptions pleaded, it is stipulated that said bank did not inform plaintiff that the check to Robert R. Ballis had been returned, that the bank also did not inform plaintiff when it received his 1950 delay rental payment on said lease and that the bank only so informed plaintiff when he tendered his 1951 delay rental."

amount stated in the order, but it was returned by the Post Office at Meadville for the reason that the named addressee could not be found. The Bank had no account in the name of Ballis, but in previous years had received similar remittances in the name of Robert R. Butler and Irene Butler, while on this occasion the message, as written by plaintiff, stated it was to be paid to Robert R. Butler and Prior Neal. The Bank did not inform either the present defendant or the sender, plaintiff Shows, that the money order as received had given the name of Ballis, although the telegram addressed to it by plaintiff and sent simultaneously correctly named Butler. Thereafter, in 1950, the next year about the same time, plaintiff again wired, a few days before the rental for that year was due, a similar amount, and the Bank received the same "without objection or comment".

*Sixty-Day Limitation for Filing Claim*

The forms used, upon which the plaintiff sent his message and the defendant instructed the bank to pay, contained in small print on the back, among other things, the following:

"All Messages Included in Money Orders are Subject to the Following Terms:

"To guard against mistakes or delays, the sender of the message should order it repeated, that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated message rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated message and paid for as such, in consideration whereof it is agreed between the sender of the message and the Telegraph Company as Follows:

"1. The Telegraph Company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the unrepeated-message rate beyond the sum of five hundred dollars; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the repeated-message rate beyond the sum of five thousand dollars, unless specially valued; nor in any case for delays arising from unavoidable interruption in the working of its lines.

\* \* \* \* \* \*

"6. The Telegraph Company will not be liable for damages or statutory penalties when the claim is not presented in writing to the Telegraph Company, (a) within sixty days after the message is filed with the Telegraph Company for transmission in the case of a message between points within the United States (except in the case of an intrastate message in Texas) or between a point in the United States on the one hand and a point in Alaska, Canada, Mexico, and St. Pierre & Miquelon Islands on the other hand, or between a point in the United States and a ship at sea or in the air, (b) within 95 days after the cause of action, of any, shall have accrued in the case of an intrastate message in Texas, and (c) within 180 days after the message is filed with the Telegraph Company for transmission in the case of a message between a point in the United States and a foreign or overseas point other than the points specified in this paragraph; provided, however, that this condition shall not apply to claims for damages or overcharges within the purview of Section 415 of the Communications Act of 1934.

\* \* \* \* \* \*

"8. No employee of the Telegraph Company is authorized to vary the foregoing."

As stated earlier, the message was not repeated and neither plaintiff nor defendant knew that the check for the payment of the amount due Butler had not been paid until long after the last day for its payment, March 6, 1945, as well as the sixty days from the filing of the message within which to file a claim had expired. In other words, both the parties to this suit were without knowledge of the mistake by the employee or employees of the defendant in transmitting the money order.

The plaintiff was further lulled into a false sense of security by the Bank receiving the remittance in 1950 without comment or advice to the sender of what had happened, and this, perhaps, was the thing which caused whatever loss was suffered, inasmuch as the telegram correctly named the payees and the Bank had previously handled similar amounts to cover the annual rentals.

Had the message been repeated back to the sending office, the error would, no doubt, have been discovered and the lease kept alive. This, as stated, was not done, with the consequences which followed. The question is, did the failure to make the claim within the time stipulated in the form preclude or bar the plaintiff from prosecuting this suit for damages after it was discovered?

It has been held that provisions such as this, where the message is not repeated, including those fixing the maximum amount of recovery, are reasonable and enforceable. A company such as defendant necessarily employs a large number of persons, including typists and dispatchers, who, because of human frailties, make mistakes and the provision for repeating back to the sending office is a safeguard intended to avoid or prevent errors such as was committed here. Western Union Telegraph Co. v. Esteve Bros. & Co., 256 U.S. 566, 41 S.Ct 584, 65 L.Ed. 1094; Gardner v. Western Union Tel. Co., 8 Cir., 231 F. 405; Western Union Tel. Co. v. Priester, 276 U.S 252, 48 S.Ct. 234, 72 L.Ed. 555; Erie R. Co. v. Stone, 244 U.S. 332, 37 S.Ct. 633, 61 L.Ed. 1173; and Western Union Tel. Co. v. Czizek, 264 U.S. 281, 44 S.Ct. 328, 68 L.Ed. 682.

It is true that in Czizek, it was held that the stipulated limitation should not be enforced There, however, the plaintiff was the person to whom the message had been sent rather than the sender, and it was held that he could not be responsible for the failure of the sender to have the message repeated since he knew nothing about it and only discovered the facts causing his loss or damage shortly before the suit was filed. In the present case, of course, plaintiff sent the message and had the option, for a small additional fee, of having it repeated, and in this situation the reasoning in Czizek does not apply. Notwithstanding the fact that he had only two days in which to pay the rentals, plaintiff made no further effort to assure himself that the money thus transmitted had been paid, no doubt because he had used the same Bank successfully on prior occasions.. These provisions in the forms for telegraph messages have been approved by the Interstate Commerce Commission as proper regulations of interstate commerce, in which class the case falls, and are no longer a matter of private agreement between the parties.

The court is forced to conclude that the failure to file the claim within the sixty days, under the circumstances recited, bars recovery in the present instance.